*James Gavin* and *Oscar B. Hord*, for the appellee.

----

HOBBS *v.* GODLOVE and Another, EXECUTORS OF GODLOVE.

Suit to recover for work and labor done by the plaintiff during his minority. Answer: 1. Payment, after the plaintiff attained his majority. 2. Setoff, for goods sold, the same being necessaries. 3. That the father of plaintiff, during his minority, had hired him to the deceased for six years, or until he should attain his majority, the deceased agreeing to give him certain articles of personal property at the expiration of the term ; that after the plaintiff attained his majority, he and his father had a settlement with the deceased of all matters between them, and the plaintiff received $175, in full payment of the demand sued for.

*Held*, that the third answer was substantially good.

Nov. Term, 1861.

Hobbs
v.
Godlove.

*Held*, also, that the plaintiff could not reply infancy to the first and second answers, as if the plaintiff was paid in full, though an infant at the time, he could not sue for and recover payment again; and the set-off, if for necessaries, as alleged, was not avoided by replying infancy.

A notice to take depositions "at the post office in the town of *America*, in *Kansas Territory*," is sufficiently certain as to the place of taking, it not being shown that there was another town of that name in the territory, or that the party was in' any way m'sled by the notice.

Section 261 of the code contemplates that a *dedimus* may issue without naming the officer before whom the depositions are to be taken, and also without designating his official character. ·

It is not material that the *dedimus* in naming the defendants does *not* show that they are sued as administrators, where it does not appear that the party was misled by the pendency of another suit against the same parties.

Tuesday, December 10.

APPEAL from the *Delaware* Common Pleas.

WORDEN, J.—On *January* 30, 1860, *Hobbs*, the appellant, filed his claim against the estate of *Joseph Godlove*, in these words, viz.,

"*February* 26, 1854.

"The estate of *Joseph Godlove* to *Eli Hobbs*, Dr., who became twenty-one years of age on *May* 24, 1854.

"To six years' labor done for said *Godlove*, in his
lifetime, at his instance and request, to-wit: from
*February* 26, 1848, to *February* 26, 1854, at twelve
dollars per month, amounting to . . . . . . . . . . . . . .$864.00
"Cr. By . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 175.00
                                                            _____
                                                            $689.00
"Interest from *February* 26, 1854, to date, . . . . . . . . 227.37
                                                            _____
                                                            $916.37
                                   (Signed)   "ELI HOBBS."

This claim was duly verified by *Hobbs*.

The defendants answered, issues were formed, and the cause was tried by a jury, resulting in a verdict and judgment for the defendants.

*Hobbs* appeals. We will notice the pleadings so far as any question is here made upon them. The defendants answered:

*Second.* "That in the lifetime of said *Joseph*, deceased, he fully paid the plaintiff the whole amount of said claim sued upon, to wit, on *December* 25, 1855."

*Fifth.* "That on *December*, 20, 1855, the plaintiff was indebted to said *Joseph God'ove*, then in full life, but since deceased, in the sum of eight hundred dollars, &c., upon an account for goods, wares, merchandise and chattels sold and delivered to plaintiff, which were necessaries, a bill of particulars of which is filed herewith, which the executors offer to set off, &c."

*Eighth.* "That on or about *February* 26, 1848, *William Hobbs*, the father of said *E i*, hired to *Joseph Godlove* the said *Eli*, who was then a minor, for the term of six years; for which the said *Joseph God'ove* agreed to pay said *Eli* one horse, saddle, bridle and martingale, and one suit of good clothing, at the expiration of six years, as pay for said services; that before the expiration of said term of six years, the said *Eli*, without any reason known to the defendants, left the employment of said *Joseph*, and went to work for one *Banty*. That afterward, to wit: on *December* 25, 1855, the said *Eli* and *William*, his father, came to the said *Joseph Godlove*, and then and there settled all matters between the said parties, and the said *Joseph Godlove* then paid the said *Eli Hobbs* the sum of $175, in money, in full payment of the claim filed herein against sai l *Joseph God'ove*, for said horse, saddle, bridle and martingale, and suit of clothes, and that all parties were then fully satisfied, and so remained until the death of said *Joseph*."

A demurrer was filed to the eighth paragraph, and overruled. This is the first error complained of. We think this paragraph substantially good. That portion of it which alleges that *Eli* abandoned the employment without excuse, may be stricken out as surplusage. If it does no good, it certainly does no harm. The paragraph alleges that the work was done under a special contract made with the father of the plaintiff, who had the right during the minority of his son to hire out his labor and agree as to the compensation. The payment and receipt of the money, in lieu of the articles previously agreed upon, was as complete a

Nov. Term,
1861.

HOBBS
v.
GODLOVE.

satisfaction of the claim as if the articles themselves had been delivered. Two objections, however, are made to this view: *First.* That it does not appear that the work sued for was the same work performed under the special contract. We think this sufficiently appears. The work sued for was for six years, commencing *February*, 1848. The special contract was for six years, commencing at the same time. *Second.* That inasmuch as the paragraph admits that *E i* was a minor when the contract was made, and as it is not averred that he was of age when the payment was made, and as the payment, by the terms of the original contract, was to be made to *Eli*, and not to his father, *Eli* is not bound by the settlement, on account of his minority. We need not stop to inquire whether the arrangement would, or would not, have been binding on *Eli* had he been a minor when the settlement was made, as it sufficiently appears that he was then of full age. The claim filed by him alleges that he became twenty-one years of age on *May* 24, 1854. This settlement is alleged to have been made on *December* 25, 1855. This, on his own showing, was some time after he attained his majority.

To the second, and also to the fifth paragraph of the answer, the plaintiff replied infancy. To these replications a demurrer was sustained, and, as we think, correctly. The second paragraph sets up payment in full of the claim sued upon. We suppose it is clear enough that if the plaintiff was paid in full for the claim sued upon, although an infant at the time of payment, he can not sue for and recover payment again.

It is said that the demurrer to the replication to the fifth paragraph should have been overruled, for the double reason that the replication is good, and the paragraph to which it is replied is bad. The paragraph sets up a set-off, of goods, wares, merchandise, &c., which are alleged to have been necessaries. It is claimed that because the answer does not allege that the goods, &c., were necessary for the plaintiff, the replication of infancy was good. The implication is clear enough, from the answer, that the goods, &c., were necessary for the plaintiff, and therefore the replication of

infancy was bad. The allegation in the answer that the goods, &c., sold and delivered to the plaintiff were necessaries, can mean nothing else, reasonably, than that they were necessary for the plaintiff.

But it is objected that the answer is bad because it assumes to answer the whole cause of action, while it sets up facts which can only bar a part of it; in other words, that it offers to set off a claim of $800, in bar of a claim of $916.37.

This point, however, does not seem to be well taken. The plaintiff's claim, after deducting a credit which he gives, amounted, on *February* 26, 1854, to only $689. To be sure, he has added interest on it up to the time of filing the claim; but computing the interest on the plaintiff's claim, from *February* 26, 1854, up to *December* 20, 1855, the time when the set-off is alleged to have accrued, and it amounted only to about $75, making the sum then due him, $764, being less than the set-off then alleged to have been due.

These are all the questions made in reference to the pleadings. We pass to the only remaining point in the case. The plaintiff moved to suppress some depositions taken by the defendants, on these grounds:

*First.* "Because the notice does not state any definite place, as prescribed by law, for taking said depositions.

*Second.* "Because of the insufficiency of the *dedimus*, in not giving the name or office of the person before whom the depositions were to be taken, and in not authorizing the taking of depositions in this case; also variance between the notice and *dedimus*."

We will notice the objections thus pointed out to the Court below; but can not notice others urged in this Court, because not pointed out and made there.

The notice stated that the depositions would be taken "at the post office, in the town of *America, Kansas Territory*." It is objected that the notice was insufficient, because it did not state in what county of *Kansas* the town of *America* was situated, and because it did not state whether *Kansas Territory* was in or out of the *United States*, or upon what continent. There is evidently but little force in the latter

Nov. Term, branch of the objection, and we incline to the opinion that
1861.    the first is not well taken.  Had there been an affidavit

HOBBS    showing that there were two *Americas* in *Kansas Territory,*
v.       or that the plaintiff did not know, and could not readily
GODLOVE. ascertain, where, in the territory, the town named was situ-
ated, or that he was in any way misled by the notice, the
question would have presented a different aspect.  Without
such, or a similar, showing, the notice should, we think, be
deemed sufficient.

The *dedimus* was directed " to any officer legally authorized
to take depositions."  The depositions were taken before a
justice of the peace.  Section 261 of the code clearly con-
templates that a commission, or *dedimus*, may issue without
naming the officer, and, as we think, without designating the
office of the person, before whom the depositions are to be
taken.  The commission was well directed "to any officer
legally authorized to take depositions."

The objections that the *dedimus* did not authorize the
taking of depositions in this case, and that there is a vari-
ance between the notice and the *dedimus*, are taken on the
ground that the *dedimus*, in naming the defendants, does not
state the fiduciary character in which they are sued, while
the notice does.

These objections are not well taken.  The suit was against
the defendants, in a particular capacity to be sure, but still
it was against them; and it is not material that the *dedimus*
did not state that particular capacity.  The plaintiff was in
no manner misled, as it does not appear that he had any
other suit pending against the defendants.  The *dedimus*
was sufficient, and the variance between that and the notice
was of no consequence.  If a writ be general, the complaint
may describe the parties in a particular character.  *Cole* v.
*Peniwell*, 5 Blackf. 175.

There is no error in the record for which the judgment
ought to be reversed.

*Per Curiam.*—The judgment is affirmed, with costs.

*Walter March*, for the appellant.

*David Nation*, for the appellees.