## S. C. HASTINGS *v.* E. W. DOLLARHIDE, GEORGE OLINGER, JOHN J. BASSETT, OLIVER L. BASSETT, ROBINS McCOY, J. T. THOMPSON, ISAAC KIRKENDALL, WALLIS JOSLIN, MARY JOSLIN, AND ALFRED M. JAMISON.

INFANCY—WHO CAN TAKE ADVANTAGE OF.—No one can take advantage of the fact of infancy in avoidance of contracts except the infant himself, or his heirs or personal representatives.

CONTRACTS OF INFANT—HOW AVOIDED.—An infant may make or indorse a promissory note, and as to him, the note or indorsement will not be void, but merely voidable, at his election.

INFANT MAY CONTRACT BY AGENT.—An infant may execute a promissory note by an agent, and an infant promissee may also authorize another to transfer a note by indorsement for him, and the transfer is valid until avoided.

INDORSEMENT OF NOTE BY INFANT.—An indorsee of a promissory note, deriving title from an infant indorser, acquires a good and valid title to the note against every other party thereto except the infant. The infant may, at any time before ratifying the transfer, intercept payment to the indorsee, or by giving notice to the maker of his avoidance, furnish him a valid defense against the indorsee.

AVOIDANCE OF INDORSEMENT BY INFANT.—Until the infant gives notice of his avoidance of his indorsement of a promissory note, the title of the indorsee is valid, and the maker cannot plead the infancy of the indorser, in an action brought on it, as a defense.

RATIFICATION OF INDORSEMENT OF INFANT.—An infant promissee sold a promissory note, received the purchase money, and indorsed the note to the purchaser, and for eleven months after she arrived at her majority made no offer to return the purchase money, nor did she do or say anything indicating an intention on her part to disaffirm her indorsement; *held,* that the *[illegible]* acts amounted to a ratification of the assignment.

DEED OF INFANT.—The deed of an infant is not void, but voidable.

WHEN INFANT MAY AFFIRM DEED.—An infant grantor can neither affirm nor disaffirm a conveyance of land made during nonage, until he attains the age of legal majority.

DEED OF INFANT—HOW DISAFFIRMED.—If an infant grantor, after attaining his majority, executes a conveyance of lands embraced in a deed given by him when a minor, the second conveyance will work a disaffirmance of the first, unless before the execution of the second conveyance the first has been ratified.

DEED OF INFANT ONCE RATIFIED CANNOT BE DISAFFIRMED.—If an infant grantor, after arriving at full age, ratifies a conveyance made by him during infancy, he will have no power to revoke the ratification and disaffirm such conveyance thereafter.

DEED OF INFANT—HOW RATIFIED.—The voidable deed of an infant may be ratified after he arrives at mature age, by an express verbal ratification in words, or by acts which reasonably imply an affirmance, or by an omission to disaffirm the deed within a reasonable time. What is a reasonable time will depend on the peculiar circumstances of each case.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The facts are stated in the opinion of the Court.

*Whitman & Wells,* for Appellants.

The transfer and delivery of the note for a valuable consideration vested title in plaintiff. (*Prescott* v. *Hall,* 17 Johns. 284; *Briggs* v. *Dorr,* 19 Johns. 95; *Jones* v. *Hitter,* 13 Mass. 304; *Billings* v. *Jane,* 11 Barbour, 620.)

There is no question but that in the case at bar the plaintiff paid a valuable consideration for the note. The Court finds that he paid eight hundred dollars. The payment was made to Munk, who had the note in his possession, by the permission and at the request of the payee, for the purpose of discounting or collecting the same, as he might be able. Upon the receipt of the money, Munk delivered the note to the plaintiff, who has since been the holder of the same, and, under the well settled rules of law before cited, has been the owner, and entitled to collect the amount due thereon. Being thus the real party in interest under our statute, the suit was properly brought in his name, and could only be so brought.

The note passed to the plaintiff by indorsement, (Wood's Digest, p. 75, Art. 198,) for the fact of infancy did not interfere with the right of the payee to indorse. (Edwards on Bills, p. 246; Parsons on Bills, Vol. 1, p. 70; Parsons on Bills, Vol. 2, p. 3; *Nightingale* v. *Wittington,* 15 Mass. 272; *Hardy* v. *Waters,* 38 Maine, 450.)

In *Nightingale* v. *Wittington,* Parker, C. J., said: "That an infant may indorse a negotiable promissory note, or a bill of exchange, made payable to him, so as to transfer the property to an indorsee, for a valuable consideration, seems to be well settled in the Law Merchant, and is noways repugnant to the principles of the common law."

The payee, although an infant, could indorse by herself, or her agent or attorney. Letters of attorney made by an infant

are generally spoken of as utterly void; but yet, it is conceded that an infant may delegate authority to indorse a note, and that there are exceptions to the rule that letters of attorney are void. Mr. Parsons, in his work on Bills, Vol. 1, page 70, after laying down the rule that an infant may indorse, goes on to say: "And it seems that such indorsement may be made by the agent or attorney of the infant, or at least that such indorsement is susceptible of ratification by the infant, after he becomes of age."

In Story on Agency, page 7, we find the rule as follows: "An infant may authorize another person to do any act which is for his benefit; but he cannot authorize him to do an act which is to his prejudice. If, therefore, an infant should make a letter of attorney to take livery of lands as a feoffment to him, it will be good, for it will be intended for his benefit."

The policy of the law is to declare no act of the infant absolutely void; but to place all, excepting, perhaps, those which are manifestly and unquestionably to the injury of the infant, upon the same basis—to make them voidable at the option of the infant. The protection of the infant, which is the object of the law, is thus allowed, and strangers are prevented from availing themselves of that which is properly the personal privilege of the infant.

As in the case at bar, were we standing solely upon the indorsement by Munk, as attorney or agent, and were it held that his appointment, and his acts under it, were void, then defendants could avail themselves of such ruling as matter of defense to this action, and put plaintiff out of Court, notwithstanding the infant might desire to ratify, or might actually have attempted to ratify such acts. This would be absurd, unjust, and inequitable.

Place the delegation of authority and the acts done thereunder upon the basis of voidable acts only, and then the infant will have all proper protection, while the rights of the party who may have had dealings with him or her will not be injured.

The claim of defendants is that Ysabel Armijo, their grantor, and payee of the note sued on, repudiated. the contract and gave evidence thereof after reaching her majority by selling the same interest previously conveyed to defendants and others, to H. H. Hartley. This amounts to nothing more than a plea of failure of consideration. To support this plea, the defendants offered a deed from said Ysabel to H. H. Hartley, which was admitted under the objections and exceptions of plaintiff.

We contend that the deed was improperly admitted, because the pleadings made no proper case for such admission.

Possession, in the absence of proof to the contrary, is deemed to actually accompany a conveyance of real property. The presumption then is, that the defendants received possession from Ysabel, that they went into possession under her, and so continue in possession. If so, then they should have offered to surrender their deed to be cancelled, and to have returned to her the rights derived from her.

They cannot be allowed to retain all they have received, and, at the same time, repudiate the consideration therefor. (*Jackson* v. *Norton*, 5 Cal. 262.)

But, we submit with confidence the proposition that these defendants have no right to raise the question of the infancy of their grantor, either in respect to the consideration of the note or the appellant's right to maintain the action.

"Infancy is strictly a personal privilege; no one can take advantage of it but the infant or his legal representatives." (2 H. Bla. 515 ; 3 Camp. 254.)

"Several parties join in a security; the infancy of one cannot be taken advantage of by the others." (4 Taunt. 10, 468.)

"And the infant may always sue on his contract the same as if he was an adult." (2 M. & S., 205 ; 6 Taunt, 118 ; 2 Strange, 938 ; 4 Taunt. 469 ; Bacon's Abridgement, Infancy, 1, 4.)

"Infancy (say the authorities) is not permitted to protect fraudulent acts of the infant," and with stronger reason we may urge, nor of the adult contracting with the infant.

"No one but the infant himself, or his legal representatives,

can avoid his voidable deed or contract." (2 Kent. Comm. 236; *Van Bramer* v. *Cooper*, 2 Johns. 279; *Jackson* v. *Todd*, 6 Johns. 257 ; *Oliver* v. *Houdlette*, 13 Mass. 237.)

These defendants, as has been well observed, are not the guardians of the legal rights of the infant; the question is not upon her liability as arising out of or connected with the contract in any aspect of the case, but it is simply an attempt of adults, not one, but many, to repudiate their own contract.

It seems to be insisted on, with great force, by the learned counsel for defendants, that the power of attorney of an infant is absolutely void. We are not aware that the authorities support that position, and we believe it cannot be sustained in any other than a limited sense, applying it to cases where a formal power is necessary to be given under seal, to be executed with all such solemnity as a deed imports, and even then we shall submit that the tendency of modern decisions is hardly to support the doctrine.

It may be that there is a lack of uniformity in the cases; yet, if we keep the distinction above noted in view, much of the discrepancy will be reconciled.

Chancellor Kent states the tendency of modern decisions to be "in favor of the reasonableness and policy of a liberal extension of the rule that the acts and contracts of infants should be deemed voidable only;" and the case of *Zouch* v. *Parsons*, a leading authority on this subject, has, as the same author remarks, "been recognized as law in this country, and is not now to be shaken."

It has been adhered to in the various cases cited in our former brief, and recognized as a necessary relaxation of a technical rule in favor of all mercantile transactions. (Edwards on Bills, 246; Parsons on Bills, Vol. 1, page 70; same, Vol. 2, page 3.)

It is not too late to question the accuracy of those cases that it is claimed have laid down the rule in such broad terms as seem to have been assumed in this defense, and to inquire why a power of attorney given by an infant, authorizing the execution of a deed in his name, should be absolutely

void, while the deed itself, if executed by the principal, would be only voidable; why the indorsement of a note by the agent of an infant, or a person claiming to be such, is of no effect, though the infant might himself indorse it, and thereby pass a valid title; why the making of a note by a person of full age, competent to transact business in his own behalf, cannot be done in the name and as the act of an infant, and yet the same act, if done by the infant around whose acts the law, in theory at least, assumes to throw its protecting shield, is or may be valid and binding upon him, even to the destruction of his estate.

The infant may assume all these positions at his electio˙ and his peril, guarded only by the right of disaffirmance, ( the power to treat the act as voidable.

He may take upon himself the obligation of a surety. (*Curtin et al.* v. *Patton et al.*, 11 Serg. & Rawle, 305, 310; *Hinely* v. *Margaritz*, 3 Barr. 428.) May confess a judgment, or suffer a decree to pass without the interposition of an attorney *ad litem.* (*Porter's Heirs* v. *Robinson*, 3 Marshall, 253; *Austin* v. *Charleston Fem. Seminary*, 8 Metcalf, 196, 203; *Bloom* v. *Burdick*, 1 Hill, N. Y. 131, 143; *Barber* v. *Graves*, 18 Vermont, 292.) May state an account. (11 Meeson & Welsby, 256.) Bind himself by a recognizance for another. (*Patchin* v. *Cromach*, 13 Vermont, 330.) Convey his estate by deed apart, or exchange it. (*Bool* v. *Mix*, 8 Wendell, 120, 131; *Eagle Fire Company* v. *Lent*, 6 Paige, 635; *Gillett* v. *Stanly*, 1 Hill, N. Y. 122, 125; *Dana et al.* v. *Coombs*, 6 Greenleaf, 189; *Wheaton* v. *East*, 5 Yerger, 41; *Cole* v. *Pennoyer*, 14 Illinois, 161.) Encumber it by mortgage or bond. (*Boston Bank* v. *Chamberlin et al.*, 15 Mass. 220; *Hubbard et al.*, *Executors*, v. *Cummings*, 1 Greenleaf, 11; *Lynd* v. *Budd*, 2 Paige, 191; *McGann* v. *Marshall*, 7 Humphreys, 121, 126.) May bind himself by a negotiable note. (*Goodsell* v. *Myer*, 3 Wendell, 470; *Reed* v. *Batchelder*, 1 Metcalf, 550; *Jefferd's Adm'r*, v. *Ringold & Co.*, 9 Alabama, 544.) Or by the indorsement of one. (*Nightingale* v. *Wittington*, 16 Mass. 272, 274; *Hardy* v. *Waters*, 38 Maine, 450—where it is fur-

ther held that such infant promisor may, by parol, authorize another to transfer such note by indorsement for him, and such transfer is valid.) May bind himself to service. (12 Pickering, 110; 19 Pickering, 572.)

All these acts he may do in his own name, and none but himself or his personal representatives can question or avoid the act. · The policy of the law which seeks to harmonize the proper protection to the infant with a just regard to the rights of others, is satisfied to hold all these acts as voidable only, and to that extent, and subject to the single contingency of disaffirmance, he is regarded as competent and *sui juris* to act for his own benefit in all these matters; and yet it seems strange that while the law does not regard him as absolutely and positively disabled from acting in these matters for himself, he is yet denied the privilege of being allowed to delegate to another his own authority for such a purpose, though "whatever a person *sui juris* may do by himself he may do by another," is, we are told, the general maxim of law. Yet, it is gravely asserted that when the infant would act thus, he is at the mercy with those with whom he deals; he has changed places with the adult, who may disaffirm the contract without being held to rescind it, retain the property of the infant, yet deny its price to his assignee, convey it away, pocket its value, yet still deny it to his own vendor.

Against such a doctrine, however, we find the authority of Judge Story, the cases above cited, the guarded language of Judge Bronson, in *Snyder* v. *Sponable*, 1 Hill, 567, in itself implying grave exceptions to the rule there given, and its conflict with the general principles of law applicable to infancy.

*John Currey*, for Respondent.

The plaintiff claimed to be owner of the note on which this action was brought, as the assignee of Ysabel Armijo. The note being non-negotiable in form, the plaintiff took it, if ever he acquired any right to it, subject to all the equities existing or arising between the immediate parties thereto. (*Green* v. *Darling*, 5 Mason, 214; *Wallis* v. *Twambly*, 13

Mass. 204; *Comstock* v. *Farnham*, 2 Mass. 96 ;· 1 Parson's Contracts, 198, 199.)

In a case of an assignment of a chose in action, which is not by the terms of it assignable, the assignee takes it on the credit of the assignor, and acquires no greater rights respecting the same than the assignor had, or would have had if he had retained it. (*Wallis* v. *Twambly*, 13 Mass. 204 ; 1 Parson's Cont. 198, 199 ; *Wood* v. *Perry*, 1 Barb. 115, 131.)

The Act entitled " an Act relative to bonds, due bills, and other instruments in writing," has not changed the law so as to affect this case. (Wood's Dig., 75, 76, §§3, 5, 6.)

By Ysabel's last conveyance with Morales, her husband, she disaffirmed and avoided the deed made and executed by her when an infant. (*Tucker* v. *Moreland*, 10 Peters, 59, 79 ; *Jackson* v. *Carpenter*, 11 John. 539 ; *Jackson* v. *Burchin*, 14 John. 124 ; *Bool* v. *Mix*, 17 Wend. 119 ; *Lessee of Drake* v. *Ramsey*, 5 Ohio R. 251 ; *Voorhies* v. *Voorhies*, 24 Barb. 150 ; 2 Kent's Com. 234–239 ; 1 Am. Lead. Cases, 232–238.)

The note in question was not duly assigned to the plaintiff. The indorsement and assignment of it was by a person who professed to act for Ysabel Armijo by written appointment, executed by her when an *infant*. This power of attorney was void. (*Sanderson* v. *Marr*, 1 Hen. Black, 75 ; *Zouch* v. *Parsons*, 3 Burrows, 1808.)

An infant cannot appoint an attorney. This was so held in *Fonda* v. *Van Horn*, 15 Wend. 634, 636 ; and in *Thomas* v. *Roberts*, 16 Meeson & Welsby, 778, it was held that an infant could not appoint an agent of any kind.

Messrs. Hare & Wallace, in 1st American Leading Cases, 250, say : " The constituting of an attorney by one whose acts are in their nature voidable, is repugnant and impossible, for it is imparting a right which the principal does not possess —that of doing valid acts. If the acts, when done, remain voidable, at the option of the infant, then he has done, through the agency of another, what he could not have done directly."

A warrant of attorney by an infant to confess judgment, is absolutely void. (*Bennett* v. *Davis*, 6 Cow. 393 ; *Waples* v.

*Hastings*, 3 Harrington, 483; *Camahan* v. *Alderdice*, 4 Harrington, 99.)

The note did not pass to plaintiff by indorsement. The payee, Ysabel, did not indorse it, and Munk, who did indorse, had no authority to do so, for the reasons already stated.

A person dealing with one who professes to be an agent, takes upon himself the risk of the fact of such agency; and if, in fact, the professed agent be a special agent, he who deals with him is bound to know, at his peril, the extent of such agent's authority, and to understand its legal effect. (1 American Lead. Cases, 544, 545; Story's Agency, pp. 145, 146, 148, 149.)

There may be cases where an infant has rendered the consideration for a note made and delivered to him or her, such as by the loan of money or the sale and delivery of personal property, which loan of money or sale and delivery of personal property is not void or *voidable*. In such a case it may be that the infant could himself transfer the note by the indorsement and sale and delivery of it, for a *valuable consideration*, so as to vest the property of the note in the assignee; but this rule prevails, if at all, because the transaction is for the benefit of the infant. But it is nowhere said, that I am aware of, that an indorsement can be made by an agent or attorney of an infant. Mr. Parsons does not say in direct terms that this may be done, but he says "It seems that such indorsement may be made by an agent or attorney, *or at least that such indorsement is susceptible of ratification by the infant after he becomes of age.*" So any act of one who assumes to be the agent of another may be ratified by the principal who is competent to ratify; but until a ratification of an unauthorized act, the act cannot be regarded as valid.

But in this case there was no ratification of the act of Munk by the infant after she became of age.

It does not appear that the transfer of this note was for the benefit of the infant. It does not appear that she needed the seven hundred dollars paid by plaintiff, as Munk testified, or that she ever received any of it. Munk don't say she did—a

thing he would have been likely to testify to if such had been the case.

It is worse than idle for plaintiff's counsel to speak of Hastings paying the value of this note, provided it was to become of value by a ratification on the part of Ysabel (after she might become of age) of the sale and conveyance of the land to defendants, for the note bore a fair rate of interest, namely, one per cent per month for the first eight months, and *two* per cent per month thereafter.

Then is it not evident that this pretended sale of the note in question was to the disadvantage of the infant, if the note was worth its face ?

It is argued on the part of plaintiff, that because the note became due before she became of age, and because the defendants could then have been made to pay it, that therefore they then became liable, and that a subsequent destruction of the consideration of the note on the part of Ysabel could not operate to discharge the defendants of liability.

This argument seems to me to be entirely fallacious. If A. should on this day, in consideration that B. would sell and deliver to him a thousand bushels of wheat on the first day of September next, make and deliver to B. his (A.'s) promissory note for one thousand dollars, payable on the first day of August next, B. could sue and perhaps recover the amount of the note before the 1st of September, even though the consideration for the note was executory. But if B. should wait until after the first of September before he commenced his action, and should refuse to perform the consideration promised for the note, no lawyer would hesitate to advise A. that he had a good defense to such note, and no Court would say that such advice was not sound.

That the conveyance by Ysabel, after she arrived at her majority, to a third person, was a *disaffirmance* of the former conveyance to the defendants, seems to be in accordance with the settled law of the land. This was so held in *Tucker* v. *Moreland*, 10 Pet. 59–79 ; *Jackson* v. *Carpenter*, 11 Johns. 539 ; *Jackson* v. *Burchin*, 14 Johns. 124.

In *Tucker* v. *Moreland*, at page 71, the Court say the nature of the original act of conveyance governs as to the nature of the act required to be done in the disaffirmance of it. If the latter be of as high and solemn a nature as the former, it amounts to a valid avoidance of it.

In *Jackson* v. *Burchin*, 14 Johns. 124, the question here involved was elaborately discussed, and the Court there say that it would seem, not only on principle but on authority, that the infant can manifest his dissent in the same manner by which he first assented to convey.

The case of *Jackson* v. *Carpenter*, 11 Johns. 589, is equally conclusive on this point, as also the learned commentaries of Chancellor Kent, Vol. 2, pages 237 and 238, and notes. (See, also, 1 Am. Lead. Cases, 232–238, and notes by Hare and Wallace; *Hayle* v. *Stow*, 2 Dev. and Bat. 320; and *Bool* v. *Mix*, 17 Wend. 119.

By the Court, SHAFTER, J.

This is an action on a non-negotiable promissory note, executed by the defendants to Ysabel Armijo, on the sixth day of September, 1858. The note was for one thousand dollars, bearing interest at one per cent per month until May 6, 1859, and at the rate of two per cent per month thereafter until due, September 6, 1859.

The complaint alleges that on the day the note was executed it was transferred to the plaintiff by indorsement, in consideration of eight hundred dollars paid by him to the payee, Ysabel Armijo.

The complaint was filed October 6, 1860; summons was issued November 20, 1860, and served on all the defendants (fourteen in number) except James Jeans; and all of the defendants, except Jeans, appeared and answered jointly. The answer contained:

First—A general denial.

Second—A special defense that the note was given without consideration.

Third—A special defense, setting forth that the said Ysabel

Armijo sold and conveyed an undivided one sixth of certain lands situate in the County of Solano to the defendants and others named in the deed, and that the said note "was a part of the consideration of the conveyance." That the grantor, at the date of the conveyance, was an infant under eighteen years of age, and that after arriving at the age of legal majority she refused to confirm the aforesaid deed, but executed a deed of conveyance of all her estate in the land to H. H. Hartley, whereby she disaffirmed the deed to defendants; and it is alleged that the consideration of the note has thereby wholly failed.

The trial was by the Court, and on the findings judgment was entered for the defendants. The plaintiff appeals from the judgment, and also from an order denying a motion for new trial.

It appears from the record that Ysabel Armijo was born December 30, 1841, thus attaining her majority December 29, 1859; that on the 6th of September, 1858, she made the conveyance to the defendants alleged in the answer, and on the same day received from the defendants the note in question; that the note was a part of the consideration of her conveyance, the balance of purchase money (one thousand dollars) having been paid at the date of the deed; that on or about the day of its date, the note was delivered by Ysabel and her stepfather to one Munk, for the purpose of collection or discount; that Munk sold and transferred the note to the plaintiff, Hastings, on the 28th of October, 1858, for eight hundred dollars, which amount was paid to Munk in two instalments; that the note was indorsed as follows: "Ysabel Armijo." "By her attorney in fact, Thomas K. Munk, as her power of attorney, filed October 28, 1858, and recorded in Liber 1, page 182, 183, of Solano County records." It further appears, that before October 27, 1860, said Ysabel intermarried with Diego Morales, and that on said 27th of October, 1860, she and her husband executed a deed, duly acknowledged, to H. H. Hartley, for the land mentioned in the said deed of September 6, 1858; that in the deed to Hartley there is a declara-

tion by said Ysabel to the effect that, by said deed, she rescinds and annuls all contracts and conveyances made or purporting to have been made by her during her minority, in any way affecting said tract of land. The deed also contained a covenant against all legal conveyances previously made by the said Ysabel. There was no evidence tending to prove that Hastings, at the time when the note in suit was transferred to him, (October 28, 1858,) had any notice that Ysabel was an infant; neither was there any evidence tending to prove that the defendants had any notice of their grantor's disability on the 6th of the same month, when they took their deed. The power of attorney referred to in the indorsement of the note to the plaintiff was given in evidence by him, and it is sufficiently broad in its terms to authorize Munk to sell and assign the note.

It appears from the findings that the Court below considered that the plaintiff was not the owner of the note as between himself and his alleged assignor, and that, therefore, the plaintiff had no right of action on the note against the parties by whom it was made; and, further, that the conveyance made by Ysabel to Hartley, after attaining her majority, had worked an entire failure of the consideration on which the note was given. These questions will be treated separate and apart from each other.

1. As to the title of the plaintiff to the note.

It is insisted for the respondents that the power of attorney given to Munk by Ysabel was void by reason of her infancy, and that the indorsement falls with the power.

The rule is well settled that no one can take advantage of the fact of infancy except the infant himself, or his heirs or personal representatives. If the defendants in this action have the right to controvert the title of the plaintiff to the note in suit on the ground of the infancy of Ysabel Armijo, it must be on the hypothesis that the assignment is not voidable merely, but void, and that therefore payment by the defendants to the plaintiff would leave them still exposed to an action at the suit of Ysabel.

It is now well settled as a part of the law merchant that an infant may make or indorse a promissory note or bill of exchange, and that, as to him, the note in the one case and the indorsement in the other will not be void, but voidable at his election. (*Nightingale* v. *Wittington*, 15 Mass. 272; *Hardy* v. *Waters*, 38 Maine, 450; Storey on Promissory Notes, section 78.

It is also established by the tenor of the modern decisions that an infant may execute a promissory note by agent. In *Whitney* v. *Dutch*, 14 Mass. 457, it appeared that of two co-partners in trade, one was an infant, and the other of full age. The adult, for a debt of the co-partners, made a promissory note in the name of the firm, and the infant, after coming of full age, ratified it; and it was holden good against him. It has also been held that an infant promissee may, by parol, authorize another to transfer a note by indorsement for him, and that the transfer so made will be held valid until avoided. (*Hardy* v. *Waters*, 38 Maine, 450.) In the case last cited, it was admitted that an infant might transfer a note payable to himself by indorsement, and the point directly presented was, whether he could confer upon another power to do it for him. (3 Wend. 479; 17 Wend. 419; 2 Hill, 120; 11 Wend. 85.)

Mr. Chancellor Kent, in summing up the doctrine, says: "It is held that a negotiable note, given by an infant, even for necessaries, is void; and his acceptance of a bill of exchange is void; and his contract as security for another is absolutely void; and a bond, with a penalty, though given for necessaries, is void. It must be admitted, however, that the tendency of modern decisions is in favor of the reasonableness and policy of a very liberal extension of the rule that the acts and contracts of infants should be deemed voidable only, and subject to their election when they become of age, either to affirm or disallow them. If their contracts were absolutely void, it would follow as a consequence that the contract could have no effect, and the party contracting with the infant would be equally discharged."

In the case at bar the note executed to the infant payee

was not negotiable; but, on principle, no distinction can be taken between negotiable and non-negotiable notes in the matter of the power of an infant to make or to indorse them. The cases cited proceed upon the ground that infants are fully protected by the rule holding their contracts of every description voidable in their election, with the exception of a few peculiar contracts, in relation to which the Court can say, on inspection, that they are necessarily prejudicial to the infant, and of these the contract of suretyship may be stated as an example.

In view of the foregoing authorities, as well as upon principle, we are satisfied that both, under the written power given by Ysabel Armijo to Munk, and the verbal directions given by her to him at the time she put the note into his hands for collection or discount, he was authorized to sell and transfer the note to the plaintiff, and that when Ysabel became of age she had it in her power to ratify or disaffirm the assignment.

But another and perhaps more important question here presents itself. It is whether the transfer by the infant is operative in favor of the plaintiff as assignee, so that he may receive or enforce payment of the note from the defendants, and give a discharge therefor. It seems now well settled that an indorsee deriving title from an infant indorser, acquires a good and valid title to the note against every other party thereto, except the infant, since the title is not void, but voidable only. The infant may, indeed, at any time before ratifying the transfer, intercept payment to the indorsee, or by giving notice to the maker of his avoidance, furnish to him a valid defense against the claim of the indorsee. But until he does so avoid it, the indorsement is to be deemed, in respect to such antecedent parties, a good and valid transfer. (*Grey* v. *Cooper*, 3 Doug. 65 ; *Taylor* v. *Crocker*, 4 Esp. 187 ; *Jones* v. *Darch*, 4 Price, 300 ; *Nightingale* v. *Wittington*, 15 Mass. 272 ; Storey on Bills, Sec. 85.) In the case at bar there has been no attempt made on the part of Ysabel Armijo, either before or since she became of age, to avoid her assignment to Hastings, nor has she at any time attempted to collect the note of the defendants in disregard of

27

that assignment—nor, so far as the record shows, has she ever given any notice to the defendants that she did not intend to abide by the transfer to Hastings. In the case of *Nightingale* v. *Wittington*, 15 Mass. 272, a minor had received a negotiable promissory note in payment of labor in the employment of the maker of the note, and had indorsed the same to a third person for a valuable consideration, the indorsee knowing the indorser to be under age; and afterwards the father (who had previously emancipated his son in effect, by neglecting to provide for him) received the amount of the maker in discharge of the note, both the father and the maker knowing of the indorsement.

It was held that the maker could not himself deny the validity of the indorsement, and that inasmuch as the infant had never disaffirmed it, and inasmuch as the payment to the father was a payment by the maker in his own wrong, the indorsee was entitled to judgment.

The fact that the note given by Ysabel Armijo was non-negotiable, is, as we have already intimated, entitled to no consideration, so far as the question of the plaintiff's title is concerned. Notes non-negotiable at common law are made negotiable with us by positive statute. True, the persons to whom such notes are transferred hold them subject to all defenses that might be urged in suits against the maker brought by the payee; but that fact is not inconsistent with an absolute ownership of the securities vested in the party to whom they may have been transferred.

But there is another ground on which the title of the plaintiff to the note in controversy may be rested. Ysabel Armijo, since she became of age, has ratified her assignment to the plaintiff, and has thereby made it impossible for her to compel the defendants to pay the note a second time. In the absence of all proof to the contrary, it must be presumed that Munk accounted to his principal for the money paid him by the plaintiff. Ysabel became an adult on the 29th of December, 1859, and this action was commenced about eleven months thereafter. During this interval she made no offer to return

the money received by her from Hastings, nor did she do anything nor did she say anything indicating any purpose on her part to disaffirm her indorsement. The contract between herself and Hastings was not executory, but .executed, and her silence and inaction for the period named, coupled with the retention of the consideration paid her—both facts being unexplained—amount to a ratification by "mediate" presumption. (11 Stark. Ev. 745.) On this point the authorities are numerous and decisive; but as we shall have occasion to refer to them in discussing another but analogous question, one case only will be cited here. In *Delano* v. *Blake*, 11 Wend. 85, where an infant took the note of a third person in payment for work done, and retained it for eight months after he became of age, and then offered to return it and demanded payment for his work, it was held, in an action for work and labor performed by him, that the retaining of the note for such a length of time was a ratification of the contract made during infancy.

2. As to the alleged failure of consideration.

As a general rule the deed of an infant is not void, but voidable. This is the established doctrine of all the modern decisions. An infant grantor can neither affirm or disaffirm a conveyance of land made during nonage until he attains to the age of legal majority. It was so held in the leading case of *Zouch* v. *Parsons*, 3 Burr, 1,794, decided in 1765, and the rule has been steadily adhered to in England and America ever since. If an infant grantor, after attaining to mature age, execute a conveyance of lands embraced in a deed made by him when a minor, it is settled, as a general proposition, that the second conveyance will work a disaffirmance of the first. But it is clear that if an infant, after arriving at adult age, ratifies a conveyance made by him during his infancy, he will have no power to revoke the ratification and disaffirm such conveyance thereafter. Conceding, then, that the deed of Ysabel Armijo and husband, to Hartley, was in itself considered an act of disaffirmance, it becomes material to ascer-

tain whether she had not, in effect, ratified the prior deed to the defendants before that act of disaffirmance was performed.

The exemption of infants from liability on their contracts proceeds solely upon the principle that such exemption is essential to their protection; and it is admitted that the law of infancy should be so administered that that result may, in all cases, be secured. But it has not unfrequently happened that Courts, in their anxiety to protect the rights of infants in the matter of contracts made by them during nonage, have, after they have become adult, treated them to some extent as infants still, exempting them from the operation of rules of law, not only of general obligation, but founded in essential justice. The strong tendency of the modern decisions, however, is to limit the exemptions of infancy to the principle upon which the disability proceeds.

In considering the question of ratification with which we have to deal, it is to be remembered that the contract of sale made between Ysabel Armijo and the defendants, on the 6th of September, 1858, was fully executed on the day of its date by the delivery of a deed on the part of Ysabel, and a payment to her by the grantees of a part of the purchase money and the execution of their note for the balance. There is a distinction taken between executory and executed contracts in the matter of ratification, but it is the law of the latter class of contracts only that we now have occasion to consult.

In *Baylis* v. *Dinely*, 3 Maule & Sel. 481, it was held that a parol confirmation of a bond given by an infant after he came of age was invalid, and that the confirmation should be by something amounting to an estoppel in law, and of as high authority as the deed itself, and of equal solemnity.

In *Tucker* v. *Moreland*, 10 Pet. 75, after citing the foregoing case, Mr. Justice Story remarks upon it as follows: "Without undertaking to apply this doctrine to its full extent, and admitting that acts *in pais* may amount to a confirmation of a deed, still we are of opinion that those acts should be of such a solemn and unequivocal nature as to establish a clear

intention to confirm the deed, after a full knowledge that it was voidable."

In *Jackson* v. *Carpenter*, 11 John. 542, and in *Austin* v. *Patton*, 11 S. & R. 311, the rule as stated in *Baylis* v. *Dinely* was still further relaxed; for, according to those cases, acts of ratification are not required to be "solemn," nor is it requisite that they should be absolutely "unequivocal;" but if, when fairly construed, they are found to be "evincive of assent," they are held to be sufficient. But the rule in *Baylis* v. *Dinely* has been subjected to still further modification. In *Houser* v. *Reynolds*, 1 Hayw. 143, the plaintiff and defendant both claimed under one Wright, who, while an infant, had conveyed to Houser, and after coming of age had conveyed the same lands to Reynolds; but before making such conveyance, and after coming of age, he said to Houser : "I will never take advantage of my having been an infant at the time of executing the deed, and it is my wish that you should keep the land." It was held that these words ratified the conveyance. Here, there was no act done, and the words used were used informally. This decision is sustained in the matter of contracts executory, by *Goodsell* v. *Myres*, 3 Wend. 479; *Rogers* v. *Heard*, 4 Day, 57 ; *Wilcox* v. *Roath*, 12 Conn. 550 ; *Hale* v. *Gerrish*, 8 N. H. 374 ; *Bigelow* v. *Hewlett*, 19 Wend. 301. In *Orvis* v. *Kimball*, 3 N. H. 314, it was held that a declaration of an intention to pay a note, and authorizing an agent to take it up, was a good ratification, although the agent had done nothing about it.

The real estate cases so far cited, though differing *inter sese* as to the rule of ratification now in question, all agree, however, that the deed of an infant cannot be ratified by mere silence or inaction, no matter how protracted ; and (in *Bailey* v. *McKenney*, 23 Maine, 523) a reason is suggested: "Where a person has made a conveyance of real estate during infancy, and would affirm or disaffirm it after he becomes of age, in such case mere acquiesence for years affords no proof of a ratification. There must be some positive and clear act performed for that purpose. The reason is, that by his silent

acquiescence he occasions no injury to other persons, and secures no benefits or new rights to himself. There is nothing to urge him as a duty toward others to act speedily. Language appropriate in other cases, requiring him to act within a reasonable time, would become inappropriate here. He may, therefore, after years of acquiescence, by an entry or by a conveyance of the estate to another person, disaffirm and avoid the conveyance made during his infancy." The consequences to the grantee of enduring silence on the part of the grantor after he has become an adult are, as we conceive, misapprehended in this opinion, and their character is very differently presented in cases to be cited hereafter. The decision in *Lessee of Drake* v. *Ramsey*, 5 Hammond, 251, marks another step in the progress of judicial opinion upon this subject, for the Court say : " In our opinion, lapse of time may frequently furnish evidence of acquiescence, and thus confirm the title of the first purchaser ; but, of itself, it does not take away the right to avoid until the Statute of Limitations has run." The same doctrine was afterward affirmed in *Cresinger* v. *Lessee of Welch*, 15 Ohio, 193.

In the case of *Kline* v. *Beebe*, 6 Conn. 794, the effect of silent acquiescence on the part of a grantor—after becoming of age—to ratify a deed given during infancy, was fully considered and adjudged. The action was ejectment, and the plaintiff claimed title as tenant by the courtesy. He was the husband of Patty Kline, deceased, formerly Patty Bolles. In 1791, Patty, being then under age, executed to Ebenezer Bolles a quitclaim deed of the premises, and received from Ebenezer his promissory note for the purchase money. Within a year after Patty became of age she intermarried with the plaintiff, by whom the note was held during an interval of ten years, when this action was commenced. During this period of eleven years, and until the commencement of the plaintiff's action, a profound silence was observed relative to the disaffirmance of the deed, and the defendant was permitted to remain in the unquestioned occupation of the lands. It was held by Hosmer, C. J.—Brainard, Lanmer,

and Daggett, Justices, concurring—that there were three modes of affirming the voidable contracts of infants : 1: By an express ratification ; 2. By performance of acts from which an affirmance might be reasonably implied ; 3. By an omission to disaffirm within a reasonable time ; and that on the facts of the record before them there was both an implied and tacit affirmance of the conveyance.

In *Scott* v. *Buchanan et als.*, 11 Humph. 468, it was held that the voidable deed of an infant might be affirmed by an express ratification, or by acts which reasonably implied an affirmance, or by the omission to disaffirm the deed within a reasonable time ; and it was further considered that "reasonable time" was a question of fact necessarily depending on the circumstances of each particular case.  Held, in *Jones* v. *Butler*, 30 Barb. 641, that infant parties to a marriage settlement must avoid it within reasonable time after coming of age, or it would be considered as having been ratified by them.

In *Richardson* v. *Bright*, 9 Vt. 370, it was held "that in the case of *every* act of an infant, merely voidable, he must disaffirm it on becoming of full age, or he will be bound by it," and the case of *Kline* v. *Beebe* was cited with approbation, and Mr. Justice Redfield says in the opinion : "The doctrine of that case is but the long established doctrine of the common law."  This statement of the learned Judge is sustained by Co. Litt. 51*b* : "If an infant exchange lands, and after his full age occupy the lands taken in exchange, thereby the exchange is become perfect."  And it is further justified by the decision in *Holmes* v. *Blogg*, 8 Taunt. 35, in which case it is observed : "The infant is bound to give notice of the disaffirmance of a voidable contract in reasonable time ; and if the case before the Court were that simple case, I (Dallas, Judge, afterward Chief Justice) should be disposed to hold that as the infant had not given express notice of disaffirmance within four months, he had not given notice in reasonable time."

In *Delano* v. *Blake*, 11 Wend. 85, an infant, after becoming of age, held a note for eight months, given him for work and

labor while an infant, and it was held that it was too late to disaffirm.   Chancellor Kent, K. Com. 11, 263, referring to *Holmes* v. *Bloggs*, 8 Taunt., already cited, says: "The inference from that doctrine is, that without some act of dissent, all the voidable contracts of the infant would become binding. * * * This is the usual course when the infant does not intend to stand by his contract; and the confirmation of the act or deed of his infancy may justly be inferred against him after he has been of age for a reasonable time, either from his positive acts concerning the contract, or from his tacit assent under circumstances not to excuse his silence."

In the cases cited there is a marked disagreement as to whether mere acquiescence on the part of an adult will ratify a deed made by him while an infant; but in the case of a purchase made by an infant, the decisions are uniform that if the infant retains the property purchased, whether it be real or personal, and gives no notice of an intention to disaffirm within a reasonable time after he arrives at full age, it will be sufficient evidence of a ratification.   Some of the leading cases upon the subject are *Boyden* v. *Boyden*, 9 Met. 519, *Boody* v. *McKenny*, 23 Maine, 517, *Hubbard* v. *Cummings*, 1 Greenl. 11, where this doctrine is applied to the purchase of real estate. On principle, we can see no difference between the case of an infant grantor and the case of an infant grantee, justifying a distinction between them.   If the infant, on attaining majority, is bound by the rule of diligence in the one relation, then he must be in the other; and if he is exempt from the rule in either relation, then he. must be exempt in both.   Whether the infant stands as grantor or grantee in the deed to be ratified or avoided, good faith, public policy, and the very principle upon which the law of infancy is based, require that he should make his election within reasonable time after he becomes of age.   To hold otherwise would make the disability of infancy a "sword" rather than a "shield," and, in the language of Mr. Chief Justice Hosmer, 6 Conn. 505, would extend to the adult unlimited license "to hold the scales in

S. C. Hastings *v.* E. W. Dollarhide *et als.*

his own hand, and decide as further circumstances should incline."

We consider the rule as given by Chancellor Kent, and as adjudged in the 6 Conn., 8 Taunt., 9 Vt. and 11 Humph., to be the true rule of the common law, as stated in Coke upon Litt. 51*b*, and there applied to the case of land acquired by exchange. The points of difference between title by exchange and title by purchase are technical and circumstantial. They relate to the modes of acquiring rather than to the results of title when acquired; and where results are confessedly uniform and constant, why should the law be at once embarrassed and blemished by arbitrary distinctions concerning them? The central doctrine and whole purpose of the law of infancy is the protection of the infant; and if infants, under the rule in Coke upon Litt., are adequately protected against improvident exchanges of land made during their minority, so they must be against improvident purchases and sales.

We have considered this case at length for the reason that the authorities are in conflict; the questions involved are made here for the first time, and for the purpose, if possible, of subjecting exchanges and executed sales and purchases of both real and personal property by infants to one uniform rule, so far as the ratification or disaffirmance of such contracts is concerned.

There is another question raised by the record, but as it is unnecessary to decide it, we shall refrain from discussing it. Can an infant after becoming of age disaffirm a conveyance made during infancy, without returning, as a part of the process of disaffirmance, the consideration received, in so far as the consideration, whether in money, securities, or chattels, may be within his power or control?

Judgment reversed and new trial ordered.

Mr. Justice CURREY, having been of counsel, did not sit on the trial of this case.