DOUGLAS ALROY PHILLIPS, BY ALROY S. PHILLIPS, HIS FATHER AND NATURAL GUARDIAN, APPELLANT, v. THE SAVINGS TRUST COMPANY OF ST. LOUIS, MISSOURI, IN CHARGE OF O. H. MOBERLY, COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI, FOR LIQUIDATION, RESPONDENT.—85 S. W. (2d) 923.

St. Louis Court of Appeals. Opinion filed September 10, 1935.

Appellant's Motion for Rehearing Overruled October 1, 1935.

Petition for Writ of Certiorari Denied by Supreme Court November 20, 1935.

*Alroy S. Phillips, Harry E. Wiehe, John H. Gerling, Joseph L. Simpson, Harry Pohlman, Edwin A. Smith* and *Bernard Greensfelder* for appellant.

1180

*Robert J. Keefe* for respondents.

*Igoe, Carroll, Higgs & Keefe* of counsel.

SUTTON, C.—This is an action to establish as a preferred claim against defendant Savings Trust Company of St. Louis, in charge of O. H. Moberly, as Commissioner of Finance, for the purpose of liquidation, a balance of twelve dollars due plaintiff on a savings account as evidenced by his pass book. Plaintiff charges in his petition as a ground for a preference that he is a minor, and that his claim is based on deposits of money made by him with said Savings Trust Company with its knowledge of his minority.

The cause was tried on an agreed statement of facts, and the court gave judgment allowing plaintiff's claim as a common or general claim, and disallowing a preference. Plaintiff appeals.

The agreed statement of facts is as follows:

"A system of savings deposits by school children was instituted in the public schools of the City of St. Louis as a result of a contract entered into by and between the Board of Education and an organization known as Educational Thrift Service, Inc. The system was inaugurated on May 14, 1929.

"This contract, the original of which is hereby referred to for the exact terms thereof, contemplated that a bank of deposit should be named which would receive the deposits of the children as savings accounts carried in the names of the children and issue pass books to the children therefor.

"The Savings Trust Company was one of the depositories so named. The system followed was this:

"Pass books were issued by the Savings Trust Company (hereinafter referred to as the 'Trust Company'), which books were entitled 'The Savings Trust Company, in account with ............. (name of the child depositor),' and were in the same form as the pass book of Douglas Alroy Phillips, introduced in evidence herein. These books were issued by the Trust Company to teachers in the public schools, who were authorized to receive deposits from the school children and to issue to each child depositor one of the aforesaid pass books, with the name of the child entered in the blank space provided for that purpose. The teacher was to enter in the pass book the amount of each deposit made by the child, the child to retain the book as the receipt for and evidence of the deposit. Each account was designated and carried as a savings account and the Trust Company undertook to pay interest thereon.

"When a deposit was made by a school child the teacher who received it not only entered the amount of the deposit in the pass book, which was thereupon returned to the child, but also entered the amount thereof on a coupon bearing the name of the child and the amount of the deposit made. Moneys so deposited with the teacher, together with said coupons, were then forwarded to the Savings Trust Company and there deposited in the name of the child and to the savings account carried in its name. The Thrift Service, Inc., undertook to, and did, receive from the teachers the amounts deposited by the children and deliver said amounts to the Trust Company, and also to carry insurance against loss or theft of such moneys from the time of deposit thereof with the teachers to the time of receipt of the moneys by the Trust Company. It also furnished a surety bond in favor of the Board of Education of the City of St. Louis, in the penal sum of $5000.00, guaranteeing and insuring the deposit and proper crediting of all funds and moneys delivered by the children to the teachers for deposit in the Trust Company.

"No records were retained by the teachers and there was no bookkeeping by them other than the entry in the individual pass books of the amount deposited and the filling out of the coupon for transmission to the Trust Company together with the money deposited.

"Interest on the school children's accounts was paid by the Trust Company at the same rate as on adults' savings accounts.

"All deposits of the school children in the Savings Trust Company were made and handled in accordance with the above plan.

"The Trust Company kept separate accounts of deposits and withdrawals by school children and of the totals thereof in the same way that it kept separate accounts of deposits to and withdrawals from accounts of other designated classes. Thus, the Trust Company on its books showed separately the amounts for which it was obligated upon ordinary savings accounts, Christmas Club savings accounts, school children's savings accounts, checking accounts, time deposits, etc. But moneys received to all of the accounts (including those of the school children) went to general funds and were intermingled with other moneys received by the Trust Company.

"The Trust Company had knowledge of the fact that all of the school children making these deposits were below the age of twenty-one years.

"The moneys deposited by the children augmented the assets which are now in the hands of the Commissioner of Finance for liquidation, and the total of such assets is sufficient to pay all expenses of administration and preferred claims in full, but not more than 60% on common claims, and probably less."

The contract referred to in the agreed statement of facts provides for the installation and maintenance in the St. Louis public schools a system of school savings, and sets out in detail the method of operating the system.

Under this system, 10,530 school children, including plaintiff, made deposits with the defendant trust company. These deposits, at the time the trust company was taken over by the finance commissioner for liquidation, amounted in the aggregate to $81,596.64. All of these children filed claims with the finance commissioner, asking that their deposits be allowed as preferred claims. All of the claims, excepting the claim of plaintiff here, remain undisposed of in the Circuit Court, the decision thereof being held in abeyance awaiting the decision in the instant case.

Plaintiff's pass book in the instant case is entitled as follows:
"Account F                                  16826
          "School Savings
      "The Savings Trust Company
          "of St. Louis, Mo.
          "Delmar at Euclid
          "In Account with
      "Name Douglas A. Phillips
      "Address 2934 N. Euclid."

This pass book shows a balance due plaintiff of twelve dollars on deposit.

Plaintiff contends that a trust relation was created between plain-

tiff and the Trust Company with respect to the deposit made by him with the Trust Company, because, being a minor, he was without capacity to enter into a binding contractual relation with the Trust Company so as to create the relation of a depositor with the Trust Company.

It is settled law that a minor is not absolutely incapable of contracting in the sense that his contract is absolutely void, but his contract is voidable only, which means that the minor has a right to disaffirm the contract at any time during his minority or within a reasonable time after attaining his majority.

But the disaffirmance of a contract made by a minor nullifies it and renders it void *ab initio*. [Hamlin v. Hawkins (Mo.), 61 S. W. (2d) 348, 1. c. 350; 31 C. J. 1060, 1071.] The rule, however, has its exceptions and limitations.

In Pinnell v. St. Louis-San Francisco Ry. Co. (Mo.), 263 S. W. 182, involving a contract respecting a pass issued by defendant to plaintiff, who was a minor, the court said:

"It seems to follow, therefore, as a legitimate conclusion from the facts in this case that the use of this pass by the deceased cannot be otherwise construed than as a benefit. As such it may be included in the constantly widening category of contracts which when made by an infant are as valid and binding as if he were of full age."

The text of 31 Corpus Juris, at page 1012, reads as follows:

"Where an infant is in absolute and lawful possession of money as his own property, he has a right to deposit it in any place for safe-keeping, as in a bank, and he has a right to reclaim it at any time, although he is yet a minor, and the person or institution so paying it to him assumes no risk in so doing."

In Smalley v. Central Trust & Savings Co., 72 Ind. App. 296, plaintiff, who was a minor, was in possession of $1600, which was her own money. She deposited the money with the defendant subject to check. At the same time defendant furnished her with a pass book showing the deposit duly credited therein, and furnished her with blank checks to use in checking against her deposit. Afterwards, plaintiff, while yet a minor, checked the deposit out. Subsequently, plaintiff on attaining her majority sued defendant for the amount of her deposits. From a judgment against her plaintiff appealed. In disposing of the appeal, the court, after stating that the record did not disclose whence appellant had received the money, said:

"From whatever source it was received, it was her own property, and under her own control. What should she have done with it? Should she have kept it on her person and dealt it out from time to time as necessity required, or should she have deposited it in a reputable banking institution until she required it? All are ready

to say that this latter course was the sensible one for her to pursue. But, if appellant's contention is correct, she could not so deposit her money except at the risk of the bank refusing to repay it to her, until she is twenty-one years of age, and the bank would have been fully justified in so refusing, for any payment to her or to her order would have been at its peril. It would have assumed the risk that at her majority she would disaffirm the payment, and demand her money again. It is the common practice of banking institutions to accept the deposits of minors, sometimes of children, of their earnings, for Christmas saving, or for the purpose of accumulating for some other definite purpose, or as a means of training such depositors in habits of frugality. But if such deposits cannot be repaid to the minor depositors until they have reached their majority, then such banking business must of necessity end, for the banks cannot afford to assume the risk. Appellant must fail in her contention, We hold that when appellant deposited her money in appellee's bank, as she had a lawful right to do, the relation of debtor and creditor between the appellee and appellant was created, that appellant had a right to her money again, that it was the duty of appellee to restore it to her, upon a proper check or demand, and that the bank assumed no liability in so doing. [Hobbs v. Godlove (1861), 17 Ind. 359, 362.] We do not by this decision disturb the general rules of law as to the validity of contracts of minors. We do hold, however, that where a minor is in absolute and lawful possession of money as her own property, whether from the proceeds of settlement with her guardian, as compensation for services rendered, or from any other lawful source, puts it in a bank, or other place of safe keeping, rather than to carry it on her person, she has a right to reclaim it at any time, even though she is yet a minor, and the person or institution so paying it to her assumes no risk in so doing."

In Freeman v. Bank of Montreal, 26 Ont. Law. Rep. 451, involving a deposit made and afterwards checked out by a minor, the court said:

"The contract was one beneficial to the infant. He was the custodian of his own money, and the agreement merely made the bank a temporary custodian of his funds during his will. The bank's obligation was to hand back the money to its customer or pay it to his order. Nothing in this was detrimental in any way to the interest of the infant."

We can see no reason why, in the absence of fraud, the making of a deposit, by a minor, in a bank, or money, in his absolute and lawful possession as his own property, should be regarded as creating a trust relation between him and the bank rather than the relation of debtor and creditor.

Plaintiff relies on Tesene v. Iowa State Bank, 186 Iowa, 1385, 173

N. W. 918. In that case a mother had collected and deposited in the defendant bank, and later withdrawn, the proceeds of an insurance policy payable to her minor child. The bank knew the facts as to the real ownership of the money. At the suit of the minor the bank was held liable as trustee. The minor was never in the possession or control of the money as his own. He did not himself deposit the money, nor was it deposited in his name, or on his account, or with his consent. He did not himself enter into any contractual relation with the bank, or his mother, respecting the money. Her dealings with the money were wholly unauthorized. She had not a semblance of authority to collect the money or to deposit it with the bank or to withdraw it therefrom. The bank knew this. A trust would have arisen under such state of facts, though the owner of the money had been of full age.

In Stetina v. Bergstein, 204 Mo. App. 366, 221 S. W. 420, relied on by plaintiff, the grandmother of a minor became the trustee of an express trust as to money turned over to her by the minor. She would have been just such a trustee if plaintiff had been of full age. [See State ex rel. Stetina v. Reynolds (Mo.), 227 S. W. 47.]

Tucker v. Newcomb, 67 Fed. (2d) 177, and Skelly v. The Maccabees (Mo. App.), 272 S. W. 1089, relied on by plaintiff, are so clearly afield on their facts that a discussion of them here could serve no useful purpose.

But plaintiff urges that, whatever may be the rule at common law, the statutes of this State create a trust relation between a minor depositor and the bank respecting his deposit.

Section 5465, Revised Statutes 1929, Mo. Stat. Ann., Sec. 5465, p. 7660, relating to trust companies, provides as follows:

"When any deposit shall be made by or in the name of any minor, the same shall be held for the exclusive right and benefit of such minor, and free from the control or lien of all other persons, except creditors, and shall be paid, together with the interest thereon, to the person in whose name the deposit shall have been made, and the receipt or acquittance of such minor shall be a valid and sufficient release and discharge for such deposit or any part thereof to the trust company."

Section 5400, Revised Statutes 1929, Mo. Stat. Ann., Sec. 5400, p. 7611, relating to banks of deposit and discount, contains the same provisions as section 5465.

Section 5502, Revised Statutes 1929, Mo. Stat. Ann., Sec. 5502, p. 7683, relating to savings banks, contains substantially the same provisions as section 5465.

Section 5502, relating to savings banks, was first enacted in 1891. Section 5400, relating to banks of deposit and discount, and section 5465, relating to trust companies, were first enacted in 1915.

Section 5354, Revised Statutes 1929, Mo. Stat. Ann., Sec. 5354, p. 7574, relating to banks of deposit and discount, provides that such corporations shall be authorized "to conduct the business of receiving money on deposit and allowing interest thereon not exceeding the legal rate or without allowing interest thereon."

Section 5421, Revised Statutes 1929, Mo. Stat. Ann., Sec. 5421, p. 7627, relating to trust companies, provides that such companies are authorized "to receive money in trust and to accumulate the same, at such rate of interest as may be obtained or agreed upon, or to allow such interest thereon as may be prescribed or agreed, and to receive money on deposit, with or without allowing interest thereon, not exceeding in any case the legal rate." This clause of the statute, as it now reads, allowing trust companies to receive money on deposit, was first enacted in 1915. Prior to that time, the clause, as it appears in section 1124, Revised Statutes 1909, authorized trust companies "to receive money in trust and to accumulate the same, at such rate of interest as may be obtained or agreed upon, or to allow such interest thereon, as may be agreed, not exceeding in either case the legal rate, and the payment to them or their order of deposits made by minors shall be binding on them."

Plaintiff contends that the language of section 5465, which relates to trust companies such as is involved here, imposes a trust on the deposit of a minor. We are unable to agree with this contention. We can see nothing in the language of the section, when read as a whole, indicating a purpose to impose a trust. On the contrary, it appears to be a clear recognition of the right of a minor, in the lawful possession of his own money, to deposit it with a trust company and withdraw it as though he were of full age.

It will be observed that the section does not provide that the deposit of a minor shall be received or held in trust for his benefit. It would have been easy to have so provided if the Legislature had so intended. Neither the word "trust" nor "trustee" appears anywhere in the section. We do not mean to say that such language is indispensable in all cases to the creation of a trust, but some such language is indispensable unless the intention to create a trust otherwise appears.

It is significant, too, that section 5421, authorizes trust companies "to receive money in trust," and to receive money on deposit," but section 5465, though referring to any "deposit" that shall be made by a minor, fails to provide that the "deposit" shall be held "in trust." In view of this it seems evident that the Legislature, if it had intended the "deposit" to be held "in trust," would have said so.

It is also significant that the provisions of section 5400, relating to banks of deposit and discount, are identical with the provisions of section 5465 here in question, though such banks have no author-

ity or power under the statute of their creation to receive and administer trust funds.

Plaintiff urges in argument that, inasmuch as section 5400, relating to banks of deposit and discount, and section 5465, relating to trust companies, enacted in 1915, employ substantially the language of section 5502, relating to savings banks, enacted in 1891, the Legislature intended such language, as employed in said sections 5400 and 5465, to retain its trust significance. In this the plaintiff proceeds upon the theory that all deposits, including the deposits of adults as well as the deposits of minors, made in savings banks, are held in trust. If this be so, the trust obviously is not created by the language of section 5502, but is created by the language of other sections of the statute. So that the language of section 5502 was obviously not intended in itself to have any trust significance. It was merely intended to put minors on the same footing as adults with respect to their deposits, and so we think the language was employed in sections 5400 and 5465.

Plaintiff further contends that a trust *ex maleficio* arose respecting his deposit in this case, because the deposit was not made with the depository designated by the Board of Education, pursuant to section 9580, Revised Statutes 1929, Mo. Stat. Ann., Sec. 9580, p. 7313. There is no merit in this contention. The moneys deposited with the defendant trust company by the school children under the system adopted and used were in no sense the moneys of the school board. The moneys belonged to the school children, who, through their teachers as intermediaries, caused the moneys to be deposited in their names with the defendant Trust Company.

The Commissioner recommends that the judgment of the Circuit Court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the Circuit Court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.