CAROLINA TELEPHONE & TELEGRAPH
CO., Inc. v. JOHNSON et al.
No. 5708.

Circuit Court of Appeals, Fourth Circuit.
May 12, 1948.

490

George M. Fountain and C. H. Leggett both of Tarbow, N. C., for appellant.

Franklin T. Dupree, Jr., of Raleigh, N. C. (A. J. Fletcher, of Raleigh, N. C., on the brief), for appellees.

Before PARKER and DOBIE, Circuit Judges, and BRYAN, District Judge.

BRYAN, District Judge.

The district court has found the appellant negligent in registering the transfer of some of its corporate stock owned by two minors, the principal appellees, a decree for damages has accordingly gone against the appellant, and this appeal challenges the conclusion of liability reached by the trial judge.

The stock involved consists of two lots, one of 68 shares in the first cause of action, and the other of 66 shares in the second cause of action, upon which the appellees counted in their complaint.

During the whole of the period under discussion the appellant was a corporation organized and existing under the laws of North Carolina, with its principal office and place of business there.

Upon her death in 1931, Pattie T. Johnson, a resident of North Carolina, by her duly probated last will and testament bequeathed a part of the residuum of her estate to her four grandchildren, the issue of her son E. V. Johnson, with the stipulation that if prior or subsequent to her death another child or children should be born to E. V. Johnson and his wife, then the after-born child or children should participate equally with the other children in the distribution of that part of the residuary estate.

Presumably to keep the bequest intact awaiting the possibility of unborn children, the will directed in Item 10 that E. V. Johnson, son of the testatrix, should be "appointed guardian of Estelle Johnson, Richard Johnson, E. V. Johnson, Jr. and Pattie May Johnson, and any other child or children that may be born to E. V. Johnson and wife, should I die before they arrive at the age of twenty-one years, and the said E. V. Johnson is to act as guardian for said children in handling whatever estate I leave to them without bond."

In the same instrument E. V. Johnson was given power of sale over the property committed to him as guardian, by item thirteen which was as follows:

"Item Thirteen: I hereby give to E. V. Johnson, Estelle J. Salsbury and Hugh Johnson, Guardians above named, power and authority, over any and all property coming into their hands as Guardians, to hold, manage, exchange, convert, sell, convey, lease, improve, invest, reinvest and keep the same invested in such stocks, bonds or other securities and properties as shall, from time to time, appear to them for the best interest of their respective wards, and to exercise any of the powers hereinbefore vested in them as Guardians without an order of Court."

While it is true that, under the law of North Carolina, this provision of the will did not create a guardianship, it did create a trust in the property given to the minor children and clothe the trustee with a power of sale over it (Camp v. Pittman 90 N.C. 615), a matter to be considered in passing on the question of whether the defendant was negligent in registering a transfer of stock upon a sale by the trustee.

Neither before nor after the death of the testatrix was any other child born to E. V. Johnson; two of his four children were adults but the other two, Ernest Victor Johnson, Jr. and Pattie Ruth Johnson, now Faulkner, were minors during the entire period in inquiry; and we are in this cause concerned only with the portion of the minors in 134 shares of the capital stock of the appellant corporation, the chief holding in which the infants were beneficiaries.

Having moved his family to Texas, E. V. Johnson on September 3, 1934, was appointed guardian of Ernest Victor Johnson, Jr. and Pattie Ruth Johnson by the County Court of Brown County, Texas. In October of that year the administrator petitioned the appropriate Superior Court in North Carolina for advice in the distribution of the estate of Pattie T. Johnson. All persons in interest in the estate were properly impleaded, and in March 1935 a judgment was entered that:

"E. V. Johnson, Guardian and Trustee, under Item 10 of the last will and testament of Pattie T. Johnson, is entitled to receive for the benefit of Richard M. Johnson, Estelle J. Bean, E. V. Johnson, Jr., and Pattie Ruth Johnson; and any other child or children that may be hereafter born to the said E. V. Johnson—eighty six shares of common stock of the Carolina Telephone and Telegraph Company—and forty eight shares of common stock in the Carolina Telephone and Telegraph Company—it is further ordered and adjudged that the said P. L. Salsbury, Administrator C. T. A. of Pattie T. Johnson, pay and transfer the share of the children of E. V. Johnson, hereinbefore set forth, to E. V. Johnson, as guardian and trustee without bond, under the last will and testament of Pattie T. Johnson, with all the rights and powers set forth in Items 10 and 13 of the said will, for the use and benefit of Estelle J Bean, Richard M. Johnson, E. V. Johnson, Jr., Pattie Ruth Johnson, and any other child, or children, that may be hereafter born to said E. V. Johnson."

To accomplish the prescribed transfer the administrator on April 1, 1935, presented to the appellant a certified copy of that judgment together with the two common stock certificates, for 86 and 48 shares, in the name of Pattie T. Johnson. Registration was made on April 4, 1935 and three new certificates were issued for 34, 34 and 66 shares, respectively, and delivered by the administrator to the Clerk of the North Carolina superior court. In the summer of 1935 E. V. Johnson as guardian under the Texas appointment petitioned the Clerk for the delivery of the stock to him. September 27, 1935 the Clerk entered an order to that effect and mailed the three certificates to Johnson in Texas.

At its May 1936 term the District Court of Brown County, Texas in a suit brought for the purpose duly passed this decree:

"It is therefore considered, ordered, adjudged and decreed by the Court that title to, and possession of, 17 shares of said common stock in the Carolina Telephone & Telegraph Company be, and it hereby is, vested absolutely in Estelle J. Bean; that title to, and possession of, 17 shares thereof

be vested absolutely in Richard M. Johnson and that title to, 17 shares thereof be vested in each of said minors Ernest Victor Johnson, Jr. and Pattie Ruth Johnson, respectively, but that possession of said last mentioned shares remain in their said Guardian, E. V. Johnson; * * *

"It is further considered, ordered, adjudged and decreed by the Court that Certificate No. 2895 for 66 shares of said stock be held by, and remain in the custody of E. V. Johnson as Trustee for the use and benefit of Estelle J. Bean, Richard M. Johnson, E. V. Johnson, Jr., Pattie Ruth Johnson and any other child or children that may be hereafter born to the said E. V. Johnson, until the further orders of this Court, in order that the rights of future born children, if any, may be fully protected.

"It is also further ordered that E. V. Johnson have said certificates numbered 2893 and 2894 for 34 shares each reissued in certificates of 17 shares each to each of his four children now living, to-wit Estelle J. Bean, Richard M. Johnson, Ernest Victor Johnson, Jr. and Pattie Ruth Johnson, in accordance with and as allotted to them by this decree."

Upon receipt of the last order the appellant corporation took the two certificates for 34 shares each and issued new certificates of its stock, August 25, 1936, as follows:

| Certificate No. | Name | No. of Shares |
|---|---|---|
| 3368 | Estelle J. Bean | 10 |
| 3369 | Estelle J. Bean | 7 |
| 3370 | R. M. Johnson | 10 |
| 3371 | R. M. Johnson | 7 |
| 3372 | Pattie Ruth Johnson | 10 |
| 3373 | Pattie Ruth Johnson | 7 |
| 3374 | Ernest Victor Johnson, Jr. | 10 |
| 3375 | Ernest Victor Johnson, Jr. | 7 |
| | Total | 68 |

These certificates were delivered to E. V. Johnson and he released theirs to Estelle J. Bean and R. M. Johnson.

The result was that E. V. Johnson then had in his possession five certificates of stock, two in the name of Pattie Ruth Johnson for 10 and 7 shares each, two in the name of Ernest Victor Johnson, Jr. for 10 and 7 shares each, and one for 66 shares previously and still in the name of E. V. Johnson, Guardian and Trustee, under Item 10 of the will of Pattie T. Johnson. Subsequent transfers of the four certificates totaling 34 shares pose the first cause of action, and the second cause embraces the 66 shares and the transfers of the infants' distributive part thereof.

The course of disposition of the 34 shares was this: On divers days between September 7, 1937 and August 25, 1938 the certificates for 10 and 7 shares in the name of Ernest Victor Johnson, Jr., and the certificates for 10 and 7 shares in the name of Pattie Ruth Johnson were sent to the appellant by E. V. Johnson for transfer to George A. Holderness. Each certificate was endorsed in blank, and the signature guaranteed, in the name appearing on its face. Holderness, an officer of the appellant corporation, purchased the stock from E. V. Johnson on the latter's initiation and at a fair price, and there is no intimation of any unfair dealing on the part of the purchaser.

The course of the 66 shares (the second cause of action) was more complex. At the October 1939 term of the District Court of Brown County, Texas, in a suit to which all interested persons were parties, the trust created by Item 10 of the will of Pattie T. Johnson was declared terminated, and E. V. Johnson directed "to have said 66 shares of stock reissued in certificates of 16½ shares each—one certificate to Estelle J. Bean, one certificate to Richard M. Johnson, one certificate to E. V. Johnson, Jr. and one certificate to Pattie Ruth Johnson; or in the alternative, the said E. V. Johnson may sell said 66 shares of stock and divide the proceeds equally among the four children above named. It is further ordered, adjudged and decreed that the said E. V. Johnson, as guardian of the estates of E. V. Johnson, Jr. and Pattie Ruth Johnson retain in his possession, as such guardian, the shares or money herein allotted and set apart to said minors. * * *"

On December 11, 1939 Johnson, Sr., sold 30 of these shares, and divided the remain-

ing 36 shares on May 27, 1940 by having the appellant reissue 18 shares to the two adult children and a like certificate for 18 shares to E. V. Johnson, in his name as Guardian and Trustee, for the shares of the minors. The last certificate Johnson surrendered to the appellant on December 3, 1940 for transfer to his vendee.

In 1942 E. V. Johnson, Sr., died insolvent and without ever accounting to the court or to the minors for their stock or its proceeds. This action followed, predicated on the charge that in the registration of each of the stock transfers the appellant was negligent and through its negligence the minors were deprived of their stock. Particularly, the negligence ascribed to the appellant in the first cause of action (34 shares) was its failure to require E. V. Johnson to furnish an order of court authorizing the transfer; and in the second cause of action it is said that the appellant was careless in not transferring the stock in accordance with the Texas decree (which is construed as ordering alternatively a partition in kind or a sale, but not both), in allowing the sale of the last 18 shares without further order of court, and by according the Texas decree any validity whatsoever, as the district court is said to have been without authority because the Texas statutes conferred sole jurisdiction in its county court.

Clearly their case is pitched exclusively on negligence. Unless the plaintiffs have proved the appellant inattentive to the stock transfers, and its neglect the proximate cause of the minors' loss, the judgment cannot stand.

In our view of the case, accepting the facts as found by the court in the jury-waived trial, and indeed there is no substantial factual controversy, negligence has not been established against the appellant in either cause of action.

■ I. Each of the four certificates aggregating 34 shares was in the name of the infant-owner, with no mention of the guardian and with no indication of the owner's minority. Its assignment was by endorsement in that name, with a guaranteed signature, likewise without reference to guardianship or minority. On its face was no hint of defect. Completion of the transfer on that representation was not negligence.

■ Moreover, if we accept the assertion that the appellant knew the registered owners to be minors, still the transfer was not negligence. The corporation was not contracting with the infants; it was merely following their directions. In any event the minors were fully capable of concluding a contract. An agreement by them was not void, but only voidable, subject to repudiation within a reasonable time after their majority.

Refusal by the corporation to obey the instructions of the minors would have been a denial of their rights. A strikingly similar situation was met and answered in Casey v. Kastel et al., 237 N.Y. 305, 142 N.E. 671, 674, 31 A.L.R. 995, the court concluding:

"* * * The United States Steel Corporation is not in the same position as the defendants who sold the infant's stock on her behalf. When it transferred the stock on its books to the ultimate purchaser and cancelled the infant's stock certificate, it did a valid act. * * * It received nothing and retained nothing for which it can be called upon to account. It appropriated no property to itself. It was an intermediary in a sale by others; a conduit for the transfer of title. It destroyed a muniment of title merely, and did not deprive the plaintiff of her rights in the stock itself, which exists apart from the certificate. * * * It was guilty of no conversion after disaffirmance. * * * the courts have not gone so far as to say that the acts of a corporation in recording a transfer of stock amount to a conversion of the stock.

"The transfer being voidable only and legal and valid when made, the corporation had no right to refuse a transfer. * * * It could have been compelled by the purchaser by recourse to the proper remedy to make it. * * *"

■ It we make the further concession that the corporation was also aware of the guardianship and trusteeship, we still find no fault in the appellant. The Texas decree of May 1936 emphatically "vested" the 17 shares in each of the two minors, giving only possession of the certificates to the

guardian. Separation of title and possession was deliberate and considered. The corporation had advised in a letter of its assistant secretary, that the certificates be written in the name of the guardian, but its counsel was rejected or ignored. Consequently when later it received possession of the shares from the guardian, with the title duly assigned by the minors in whom it had been firmly vested by the court, there was no spur to inquiry and no want of diligence through submitting to the wishes of the titled owners.

Fair consideration of this case requires constant mindfulness of the appellant's part in the play: that the corporation was never a purchaser; it was not acquiring the stock from the minors; it was but a means to the minors' end. Always must it be remembered too that the transfer was not itself a tortious act, and that proof of the transfer is not alone proof of negligence.

■ There is nothing in the evidence which suggests that defendant had knowledge or was put on notice in any way of any breach of trust on the part of E. V. Johnson. If it knew of the minority of the children and looked to the will on record in North Carolina and the decree construing it, it saw from these that E. V. Johnson had the right to sell the stock without order of court. If it looked to the Texas proceedings, it saw that the court there had ordered the shares of stock vested in the names of those who transferred it.

■ Even if defendant knew them to be minors, it had no right to refuse to record the transfer they had made, as we have pointed out above. As minors, their transfers were good until disaffirmed; and, as pointed out in Casey v. Kastel, supra, disaffirmance would not have the retroactive effect of making the defendant a tortfeasor for recording a transfer which had not been disaffirmed at the time.

■ It should be noted, that the plaintiffs have not even yet disaffirmed the transfer of their stock as against the purchaser or holder thereof, the only disaffirmance being the allegation in their complaint against the appellant, and they are in the anomalous position of asking damages of the corporation for recording a transfer of stock which they have not endeavored to recover from the one to whom it has been transferred. They would thus allow the purchaser to keep the stock, while unloading their loss on an innocent party who did no more in making the transfer than he was required to do. We know of nothing in the law which would permit recovery under such circumstances. However, we are not called upon here to rule on the necessity for, or adequacy of, disaffirmance by minors as a prerequisite to a suit by them for rescission or for tort.·

■ II. Nor do we find negligence in the second phase of the complaint—the transfer of the minors' interest in the remaining 66 shares of stock. Here the appellant demanded a decree authorizing the transfer. As we have seen, the decree was obtained. It issued from the district court—a court of general jurisdiction in the State of Texas—out of a suit in which all proper parties had again been duly impleaded and notified. Now we are told the proceeding was coram non judice, as only the county court had jurisdiction of such a suit. From this the appellees argue the corporation negligent in accepting the decree of the district court.

■ We think it too exacting to hold the appellant liable for not having finely distinguished between the Texas courts. Appellant was not an insurer or guarantor in respect to the transfer; care and diligence were all it owed. It did not fail in that obligation by honoring a decree of a Texas court of general jurisdiction in a suit embracing all persons affected.

■ Again, appellant adhered to the decree. True, a partition of the stock in kind or a sale with a division of the proceeds was ordered. But the decree did not expressly prohibit a division of part and a sale of part. Flexibility in distribution was its aim. The trustee and guardian did not deviate from the decree.

■ On the sale of the 18 and last of the shares of the minors, negligence is laid to the appellant for not insisting upon an order of court. The last decree had generally authorized the guardian to make a partition, and to retain the infants' portion ei-

ther in shares or money. The appellant corporation might with reason have believed the guardian was thereby entitled to reduce his wards' shares to cash. Insistence upon a further decree was not a requisite of diligence.

Ground for actionable negligence in the transfer of stocks is greatly narrowed in North Carolina by statute. The Uniform Fiduciaries Act was adopted there in 1923. General Statutes, §§ 32-1 to 32-13. Pertinent here is sec. 32-4 reading:

"Registration of transfer of securities held by fiduciaries.—If a fiduciary in whose name are registered any shares of stocks, bonds or other securities of any corporation, public or private, or company or other association, or of any trust, transfers the same, such corporation or company or other association, or any of the managers of the trust, or its or their transfer agent, is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in making the transfer, or to see to the performance of the fiduciary obligation, and its liable for registering such transfer only when registration of the transfer is made with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making the transfer, or with knowledge of such facts that the action in registering the transfer amounts to bad faith."

 The stock in the second cause of action was registered in the name of the guardian. The statute would, we think, be an absolute bar to the appellees' claim. There was no "actual knowledge" on the part of the appellant either of the commission by the fiduciary of a breach of his obligation or of facts revealing bad faith in the transfer.

Whether, because of the appellees' premise in the first cause of action that the 34 shares should have been treated as belonging to the guardian, the statute also precluded the appellees' claim in that cause of action, we are not called upon to decide.

 We do decide, however, that there was not negligence attributable to the appellant in either cause of action. Furthermore, negligence to be actionable must also be the proximate cause of the loss. Cf. Smith v. Nashville & D. R. 91 Tenn. 221, 18 S.W. 546. And it cannot be said that the negligence of the defendant in registering the transfer of stock was the proximate cause of the loss sustained by plaintiffs as the result of the default of their guardian, since it does not appear that they cannot recover the stock or its value from those to whom it was transferred, or their assigns, or that they have made any effort to do so.

In denying recovery we place our decision squarely on the ground that plaintiffs have not established negligence on the part of defendant in registering the stock transfers or that they have sustained loss as a result of such registration. We note in passing that any recovery in excess of $2500 in this case would go, not to the infant plaintiffs, but to the surety company which reimbursed them for the default of their guardian; and it would be an unfortunate result if this surety company, which was paid for insuring the fidelity of the guardian, could thus shift its loss to an innocent party that did no more than it was in duty bound to do, even if it had known that the holders of the stock were minors and that the transfers might be disaffirmed.

The judgment of the district court will be reversed and the action will be remanded with direction to enter judgment for the defendant.

Reversed.