**SOUTHERN CALIFORNIA EDISON CO., Limited v. HURLEY.**

No. 13143.

United States Court of Appeals
Ninth Circuit.

Jan. 6, 1953.

Rehearing Denied Feb. 25, 1953.

Fulcher & Wynn, Los Angeles, Cal., for appellant.

Thurman L. McCormick, Kansas City, Mo., Harold Easton, Los Angeles, Cal., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

This is the same action with which we had to deal in Hurley v. Southern California Edison Co., 9 Cir., 183 F.2d 125. After our decision in that case the action was again tried and a judgment was entered in favor of Hurley, plaintiff in the action, and Southern California Edison Company has appealed.

The action was brought by Hurley to require it to account for dividends on its stock and certain stock rights which the Company is asserted to have paid out and delivered to the wrong person. The action concerns dividends and stock rights relating to two separate groups of shares in the defendant company.

As detailed more at length in our former opinion, in the month of November, 1928, when Hurley was a minor of the age of 19 years,[1] William Price, the husband of Elizabeth J. Price, who was Hurley's grandmother, caused the company to issue in the names of Elizabeth J. Price, George E. Burton, (who was Hurley's uncle), and Hurley, as joint tenants with full right of survivorship, certificates evidencing ownership of 575 shares of the common stock of the company. A few days later, at the request of Mrs. Price and her husband, the company issued certificates also in the names of Elizabeth Jane Price, George E. Burton and Lester Hurley as joint tenants with right of survivorship, representing 88 shares of the common stock and 191 shares of the preferred stock of the company.

The trial court has found that all of these shares were before their transfer the property of William Price. The corporate records introduced in evidence indicate that

the second group of shares, namely, the 88 shares of the common and the 191 shares of the preferred stock, was transferred to the joint tenants mentioned from Elizabeth J. Price in whose name that group of shares previously stood on the records of the corporation.

Prior to the time these transfers were made, Mrs. Price had procured from Hurley his signature upon the two blank dividend order forms mentioned in the former opinion. One of these orders when completed requested payment of all dividends on the 575 shares of common stock to Mrs. Price and the other requested like payment of dividends on the 88 shares of common and 191 shares of preferred. The dividends and stock rights paid to Mrs. Price on account of the 88 shares of common and 191 shares of preferred stock were purportedly paid under and pursuant to this latter dividend order. A portion of the judgment recovered by Hurley and now before us on this appeal was for the value of those dividends and stock rights paid to Mrs. Price on account of these 88 shares of common and 191 shares of preferred stock.

But as pointed out in our opinion upon the petition for rehearing on the former appeal, the company did not pay the dividends and stock rights here in issue and arising out of the 575 shares pursuant to the other blank dividend order which Hurley had executed, for the reason that about a month after the dividend orders had been received by the company, Mrs. Price, following the death of her husband, caused a Kansas City, Kansas, bank to forward to the defendant company the certificates for the 575 shares of common stock with assignments attached purporting to transfer these shares to "Mrs. Elizabeth J. Price or George E. Burton". The findings upon the new trial, as did those upon the former trial, disclose that the certificates were then returned to the Kansas bank with a request that the signatures of the purported transferors (Mrs. Price, Burton and Hurley) be guaranteed. On February 1, 1929, in re-

[1] The court found he was then 20 years of age. The testimony shows he was born December 18, 1908. He became 20 on December 18 following the initial transfer to him, and 21 on December 18 following the transfers to Price and Burton mentioned hereafter.

sponse to this request, the defendant again received the forms of assignment, with the signatures of ·Mrs. Price and Burton guaranteed. On February 7, 1929, the defendant company again returned the forms of assignment with a letter requesting that Hurley's signature be guaranteed and also suggesting that the transferee designation be changed to the joint tenancy form. Thereupon the bank added a guarantee of the genuineness of Hurley's signature and changed the transferee designation from "Mrs. Elizabeth J. Price or George E. Burton" to "Elizabeth J. Price and George E. Burton, as joint tenants, with full rights of survivorship". Following the receipt of these altered assignments, and on February 19, 1929, the 575 shares were transferred to Mrs. Price and Burton as joint tenants. As we stated in the former opinion on the petition for rehearing, the dividends and stock rights on the 575 shares were paid or delivered to Mrs. Price pursuant to a newly executed dividend order signed by Mrs. Price and Burton.

The court found that when the certificates were first issued in the three names, Hurley had no knowledge of them or that they had thus been transferred; that he never had possession of any of the certificates, and did not know of his ownership of any interest in the stock of the defendant company; that he did not know of the purpose or use to be made of the dividend orders which he had signed in blank; "and did not know of the existence of any assignment of his interest in the 575 shares of common stock to Elizabeth J. Price and George E. Burton", but signed the blank dividend orders and the forms of assignment without inquiry as to the reason for his signature and in reliance upon a relationship of trust and confidence which existed between himself, on the one hand, and Elizabeth. J. Price and George E. Burton, on the other, and that the latter two concealed from Hurley his interest in these stocks until after his grandmother, Mrs. Price, died on December 27, 1943, after which time, and promptly following his first discovery of the facts, Hurley disaffirmed all these transfers and dividend orders which had been signed by him. Subsequent to this discovery, the action mentioned in

our former opinion was brought by Burton against Hurley in the United States District Court for the District of Kansas and that action, as we previously indicated, resulted in a judgment in favor of Hurley and against Burton and the court there adjudged that Hurley's purported signature on the instruments assigning the 575 shares of common stock had been forged and that in consequence Hurley was then the owner of an undivided one-half interest in those shares. The present action relates solely to the dividends and stock rights paid or delivered by the defendant company on account of the two groups of stock herein mentioned.

At the first trial the district court held that the defendant company had a good defense to Hurley's action to recover his claimed one-third of all the dividends paid to Mrs. Price by the defendant company by reason of § 1475 of the California Civil Code which provides that "[a]n obligation in favor of· several persons is extinguished by performance rendered to any of them * * *." Upon the former appeal we held that so far as the 575 shares were concerned, if it were assumed that Hurley's signature on the assignments to Mrs. Price and Burton were forged, the defendant company would act at its peril in assuming that Hurley had executed the assignments, and that regardless of the company's lack of knowledge or good faith, it remained charged with an obligation to treat Hurley as still a stockholder.

Accordingly, we held that as to the 575 shares, § 1475 did not protect the company if the signature was forged as the trial court had held since the company was charged with knowledge each time it paid dividends to Mrs. Price that no portion of these sums would ever reach Hurley because Mrs. Price was asserting that the 575 shares belonged solely to herself and Burton.

Upon a review of the California cases construing § 1475 we were of the view that that section was not available as a defense to an obligor who pays one obligee of several obligees if he at the time knows that the former intends to keep the entire amount for himself and not to account to the others.

With respect to the other group of shares, that is the 88 shares of common and the 191 shares of preferred stock, we considered that upon the record as it then stood, the company had a good defense to Hurley's claim for one-third of the dividend and stock rights arising out of those shares by reason of the provisions of § 1475. But because the trial court's conclusion that Hurley's signature on the assignments of the 575 shares were forgeries was based solely upon the court's assumption that the decision of the District Court for the District of Kansas was conclusive upon it, a view with which we could not agree, we remanded the cause to the court below to permit it to determine for itself from the evidence what the facts were with regard to the genuineness of Hurley's signature. The cause was remanded generally, without restraint as to further proceedings upon the whole case.

Upon the second trial which followed, all of the evidence which had been introduced at the first trial was by stipulation made a part of the record. There was also received in evidence the testimony of Frank L. Greenhouse, who had been manager of the investment department of the defendant company during 1928 and 1929 at the times when the stock transfers above mentioned were made. He testified that Mr. and Mrs. Price, with Mr. Burton, went to him in November, 1928, at the time the company was requested to issue the certificates, placing the two groups of shares in the names of Mrs. Price, Burton and Hurley. He said that Mr. Price on the first occasion had given directions as to the transfer of the shares and the names of the three persons to whom the certificates were to be issued, and that Price stated that he wanted "to be sure that if anything happens my wife will always get the dividends from the stock". Greenhouse testified that he told those then present that all three parties would have to sign a dividend order directing payments to be made to Mrs. Price. He said that he explained the possibility that the parties might change the dividend order but that Price expressed confidence that there was no danger of that. The witness testified that he then prepared the dividend order which covered the 575 shares and gave it to them with directions to have it executed and mailed back to the company. It was received at the company's office on December 11, 1928. The witness also testified that at the time the three parties mentioned came in, their conversation related to the transfer of the 575 shares but that at that time Mrs. Price said she had some stock in her own name and she wanted to make a similar transfer to put that stock in the names of the same three persons in joint tenancy. On that occasion she did not have her stock certificates with her but about three days later she came in with the certificates for the 88 shares of common and 191 shares of preferred stock and Greenhouse made an arrangement for the transfer of this stock into new certificates similar to the ones previously arranged for. At that time the witness wrote up the other dividend order covering this group of shares, and delivered it to Mrs. Price. It also was received by the company as executed on December 11, 1928.

With respect to the payment by the defendant company to Elizabeth J. Price of the dividends and stock rights upon the 88 shares and 191 shares pursuant to this last mentioned dividend order, the trial court has now found: "That at the time of the payment by defendant to Elizabeth J. Price of each of the dividends and stock rights aforesaid, defendant had reason to know that Elizabeth J. Price alone would benefit from such payment and performance, and that Elizabeth J. Price would not account to or pay or otherwise distribute to either George E. Burton or plaintiff any part of such payment and performance."

It is evident that this finding is based upon the testimony of Mr. Greenhouse relating to the conversation with these parties in which it had been stated that it was their desire and intention that Mrs. Price should have the exclusive benefit of the dividends on the stock as long as she should continue to live. The court's conclusion on this finding was that the payment to Elizabeth J. Price "did not operate to extinguish defendant's obligations in accordance with the provisions of § 1475 of the Civil Code of the State of California because defend-

262

ant, the obligor, had reason to know that Elizabeth J. Price, the recipient, would alone receive benefit from the performance, and would not account to either of her co-obligees, George E. Burton and Plaintiff." Accordingly, the court concluded that since Hurley·had disaffirmed the dividend order within a reasonable·time, he was entitled to recover his share of the dividends and stock rights made by the defendant company to Mrs. Price on account of this group of 88 shares of common and 191 shares of preferred stock.

With respect to the assignment of the 575 shares, the court found that Hurley had in fact signed the forms of assignment (although in ignorance of why he was requested to make such assignments, as above stated). The court also found that after the second return of the forms of assignment to the Kansas bank, when that bank guaranteed the signature of Hurley, it changed the transferee designation and made the alteration previously mentioned "without any authority from plaintiff and without the knowledge or consent of plaintiff".[2]

█ It seems clear that if this unauthorized alteration was a material one, then the instrument was wholly void and the legal effect of its delivery to the defendant company was no different than if Hurley's name had in fact been forged. As stated in Commercial & Savings Bank v. Foster, 210 Cal. 76, 81, 290 P. 583, 585: "[I]t is the

well-settled law in this state that the material alteration of an instrument after its execution by one party without the consent of the other renders it utterly void and of no legal effect as far as the altering party is concerned."[3] While the parties are not in agreement as to which law governs in this connection, it is clear that the law of Kansas, where this alteration took place, is the same. Johnson v. Moore, 33 Kan. 90, 5 P. 406; Hurt v. Stout, 105 Kan. 54, 181 P. 623.

█ The general rule is that "if the legal import and effect of the instrument is changed, it does not matter how trivial the change may be, or whether it is beneficial or detrimental to the party sought to be charged, it is a material alteration and invalidates the instrument." Dille v. Longwell, 198 Iowa 540, 197 N.W. 439, 441. In discussing the question of what constitutes a material change in a written instrument sufficient to render the same void, it was stated in Laskey v. Bew, 22 Cal.App. 393, 396, 134 P. 358, 360: "The materiality of the change, however, does not depend upon whether or not the party not consenting thereto will be benefited or injured by the change, but rather upon whether or not the change works any alteration in the meaning or legal effect of the contract. * * * A material alteration is one that works some change in the rights, interests, or obligations of the parties to the writing." A similar definition has been given by the Supreme Court of Kansas in New York

2. When the bank under date of February 15, 1929 returned the altered assignments to the defendant company, it stated: "We have also changed these assignments at the direction of the interested persons, to read Mrs. Elizabeth J. Price and George E. Burton, as joint tenants, with full rights of survivorship, thus following out your instructions in the matter and thus providing for the automatic reversion of the stock in question to either Mrs. Price or her Son, George Burton, at the time of the death of either one or the other of them." It did not specify who were "the interested persons" at whose direction the alteration was said to have been made. An examination of the altered assignments discloses that no notation of alteration was made upon the instruments

although the documents show marks of erasure. Immediately above the line on which the alteration appears, is a signature apparently that of "A. M. Ortmann". Whether this is the name of the person who made the alteration, or who Ortmann was does not appear from the record.

3. The court cited California Civil Code, § 1700, which reads: "Extinction by unauthorized alteration. The intentional destruction, cancellation or material alteration of a written contract, by a party entitled to any benefit· under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent· to the act."

Life Ins. Co. v. Martindale, 75 Kan. 142, 88 P. 559, 21 L.R.A.,N.S., 1045.[4]

██ When we examine the alteration here involved we discover that it occurred upon an instrument entitled "Assignment of stock and irrevocable power of attorney". As originally executed it read: "For value received ...... hereby sell, assign and transfer unto Mrs. Elizabeth J. Price or George E. Burton" [certain described shares of stock in the defendant company], "and do hereby irrevocably constitute and appoint ........... attorney to transfer the said stock on the books of the said company, with full power of substitution in the premises". Read literally this would authorize the company to issue the new certificates in the name of Mrs. Elizabeth J. Price or in the name of George E. Burton. On the other hand, if the new certificates were issued in like manner "Mrs. Elizabeth J. Price or George E. Burton", it seems clear that a joint tenancy would not thereby be created. Rice v. Bennington County Savings Bank, 93 Vt. 493, 108 A. 708.[5] The use of the word "or" creates an ambiguity. Cf. In re Fulk's Estate, 136 Ohio St. 233, 24 N.E.2d 1020. Apart from the negotiable instruments law, promissory notes so reading lack sufficient certainty to be negotiable. 2 B. & Ald. 418; see Daniel on Negotiable Instruments, 6th Ed. § 103. And had the new certificates been issued in that manner, it would appear that the dividends might properly be paid to either one or the other of the persons designated even if the corporation knew that the person paid would not account to the other.

On the other hand, a transfer of stock to two persons, as joint tenants, operates to create a relationship which is characterized by an equality of interest in the respective tenants and in which the right of each is protected against attempted dispositions by the other. Stark v. Coker, 20 Cal.2d 839, 844, 129 P.2d 390.

It is apparent that as this instrument was originally executed it was insufficient to create a joint tenancy, as such a tenancy results only where the instrument clearly expresses the intent to create that type of interest. In the absence of such a clear expression the courts will construe an instrument standing in the name of more than one person as creating a tenancy in common. Bowen v. May, 12 Cal. 348; Bouska v. Bouska, 159 Kan. 276, 153 P.2d 923.

We must conclude with respect to the purported assignments of the 575 shares that the alteration, which the court, on the evidence, properly found was unauthorized by and unknown to Hurley, was a material one, and that as a result these assignments were void and that the consequences as to Hurley was the same as if his signature had been forged. It follows that Hurley was entitled to recover his one-third of the dividends paid and the stock rights delivered on account of the 575 shares.

With respect to the other group of shares, the 88 shares of common and 191 shares of preferred stock, the defendant company

4. 88 P. at page 560: "It seems to be conceded that a note may be vitiated by an unauthorized alteration made by lowering the rate of interest, and properly so, for the contract shown by the paper as changed would be different from that entered into by the parties, and whether a better or worse one for the obligor is not material."

5. The defendant company was substantially correct when it told the Kansas bank in its letter of February 7, 1929: "In connection with the creating of a joint tenancy, it is impossible to join the parties in ownership using the word 'or' between the names as this does not establish ownership definitely in either party. In order that joint tenancy may be created, the parties must be definitely joined in ownership. For that reason, the use of the word 'and' is necessary and this is the accepted form by all corporations and the only form that is approved by the New York Stock Exchange for creating a joint tenancy in securities. The clause appearing in the title: 'as joint tenants with full rights of survivorship' is the clause which passes title to the survivor upon the death of one, and when a joint tenancy is created the property belongs to the two parties jointly at all times and not during the life of one only, as suggested in your letter, but the title passes to the survivor upon the death of one without the probate of the estate."

now presses upon us an argument similar to that which we noticed on our former opinion on petition for rehearing,—that whatever Hurley's rights may be with respect to a disaffirmance of the dividend order as against Mrs. Price, or her successors, a due regard for the rule stated in § 170(2)c of the Restatement of the Law of Contracts requires a holding that payments by the defendant company, in accordance with the dividend order, before its disaffirmance, and when the company had no reason to know Hurley was an infant when he signed, would discharge the company's duty.[6]

■ The company had made a similar argument to us upon the former appeal, although at the time of the argument and in the briefs it did not refer to this section of the Restatement.[7] We rejected the argument, and said: "The effect of such a disaffirmance, when made, is the same as if the act disaffirmed had never occurred,—it is deemed void ab initio." Hurley v. Southern California Edison Co., 9 Cir., 183 F.2d 125, 132.

When the company filed its petition for rehearing, and urged upon us the proposition that we had overlooked the rule of this section of the Restatement, we noted that the payments of dividends and stock rights due under the 575 shares had not been made pursuant to any dividend order signed by Hurley but under the later order signed by Mrs. Price and Burton only. Hence,

referring to the argument relating to § 170(2)c, and the question whether the dividend orders were, in effect, "assignments" within the meaning of that section, we said "we think it unnecessary to determine that question". This was because the dividends which then concerned us[8] had been paid pursuant to the Price-Burton order only. Hence we found no occasion to consider whether, as the petition for rehearing argued, we had been in error in our opinion in referring to a rule that after disaffirmance an infant's acts are deemed void ab initio.

But now, in view of the present findings of the court after retrial, it is apparent that in failing to make it more plain that we were reserving judgment on that question, we have misled the trial court. For the court, as we have indicated, has held that when the company paid these dividends on the 88 shares and the 191 shares, it "had reason to know that Elizabeth J. Price alone would benefit * * * and * * * would not account to * * * plaintiff", and hence the payment did not extinguish defendants' obligations in accordance with § 1475, and therefore the effect of Hurley's disaffirmance was to make the act disaffirmed as if it never occurred—"it is deemed void ab initio".[9]

Defendant company now lists several reasons why this finding and this conclusion should not have been made.[10] We need

6. § 170(2)c provides: "(2) Except as stated in Subsection (4) an obligor is discharged from any duty to the obligee or to any assignee, if he obtains for value, by performance or otherwise, a discharge of the duty

     *   *   *   *   *   *   *

"(c) from any holder of an assignment voidable by the assignor because of infancy, insanity, fraud, duress, mistake or illegality, if the discharge is obtained in good faith prior to avoidance of the assignment by the assignor, and the obligor neither knows nor has reason to know facts showing that the assignment is voidable."

7. In the opinion we paraphrased the argument as follows: "It asserts that the dividend orders which Hurley signed were valid until canceled, and constituted a full protection to the Company, and that Hur-

ley could not disaffirm them after Mrs. Price's death so as to charge the Company retroactively with moneys paid by it pursuant to their direction."

8. The dividends on the 88 and 191 shares we held were properly paid by reason of § 1475.

9. The trial court quotes this language from our original opinion.

10. Thus appellant points out that the 88 shares of common and 191 shares of preferred stock, prior to the November, 1928 transfers, stood in the name of Elizabeth Jane Price. It says that the effect of the statement that Mrs. Price was to have the dividends as long as she lived merely operated to limit the effect of the gift,—to reserve to her an interest sufficient to assure her those dividends, and to limit the interest passing to Burton and Hurley correspondingly.

refer to but one of these, the argument as to the application of the rule of § 170(2)c of the Restatement, which we found unnecessary to consider at the time of our ruling upon the petition for rehearing.

Our further study of the authorities bearing upon this question has now convinced us that the argument is a sound one. The Restatement sets forth the rule laid down in the leading case of Casey v. Kastel, 237 N.Y. 305, 142 N.E. 671, 31 A.L.R. 995. That case relied upon Smith v. Railroad, 91 Tenn. 221, 18 S.W. 546. It has been followed in Carolina Telephone & Telegraph Co. v. Johnson, 4 Cir., 168 F.2d 489, 3 A.L.R.2d 870. In each of those cases a minor had executed an assignment of his stock in the defendant corporation. The corporation had completed the transfer. Upon subsequent disaffirmance by the transferor it was held (1) that the transfer of shares by a minor is voidable, not void, (2) that therefore the corporation had no right to refuse to make the transfer even if it knew the tranferor was a minor and (3) therefore the corporation could not be held liable for acting upon a direction which had not then been disaffirmed. While § 170(2)c of the Restatement, which refers not merely to assignments voidable because of infancy, but also to those voidable on other grounds, concludes by stating that the obligor's discharge is subject to the condition that he "neither knows nor has reason to know facts showing that the assignment is voidable", yet that condition was met here. The court found that "Defendant did not, on November 20, 1928, or at any time thereafter until following plaintiff's disaffirmance on March 20, 1944, have actual notice or knowledge of the fact, nor did defendant have any reason to believe, that plaintiff was a minor at the time he signed dividend orders No. 12742 and No. 12743 mentioned above".

■■ The facts here bring the payments of dividends and delivery of stock rights on the 88 shares of common and the 191 shares of preferred stock precisely within the language of § 170(2)c. The dividend order here involved was executed by Hurley at the Union Station in Kansas City, Missouri. It is dated November 22, 1928, and was received by the defendant December 11, following. It is addressed to the defendant Company and directs: "Until this order is revoked in writing please remit to Mrs. Elizabeth Jane Price * * * the dividend now due, or which may become due on all shares of stock of your company, now or hereafter standing in the name of Mrs. Elizabeth Jane Price and George E. Burton and Lester Hurley on the books of your company." We think this was an "assignment" within the meaning of § 170(2)c. Under the law of California Hurley's dividend order was voidable, not void. California Civil Code, § 35; Hastings v. Dollarhide, 24 Cal. 195. Such is the law of Missouri, where Hurley resided and where he executed the order. Shipley v. Bunn, 125 Mo. 445, 28 S.W. 754; cf. Phillips v. Savings Trust Co., 231 Mo.App. 1178, 85 S.W. 2d 923.

Appellee says that § 170(2)c cannot apply here because of the fact, found by the court, that at the time these dividends were paid, "defendant had reason to know that Elizabeth J. Price alone would benefit from such payment and performance, and that Elizabeth J. Price would not account * * * to either George E. Burton or plaintiff". The argument appears to be that since the discharge mentioned in this section of the Restatement must be one "obtained in good faith", and since at the time of such a discharge it must be found that "the obligor neither knows nor has reason to know facts showing that the assignment is voidable", the existence of the fact thus found by the court disproves the existence of these necessary conditions. To this we cannot agree. While such knowledge that Mrs. Price intended to keep the dividends would, as we previously held, prevent the company from claiming a defense under § 1475, California Civil Code, yet the record falls far short of showing any want of "good faith", in the sense of § 170(2)c. This particular dividend order called for payment to Elizabeth *Jane* Price. It was in this name that this group of shares had previously stood. It had been her stock. If she undertook, as a part of the transaction of giving it away, to arrange to keep the dividends, defendant's knowledge of that fact, while it had a bearing on a defense under California Civil

266

Code, § 1475, by no means amounted to a want of good faith. Also, there is nothing to suggest that the company had any reason to know that the dividend order was voidable. On the contrary, the finding was that there was no knowledge or reason to believe "that plaintiff was a minor at the time he signed".

The rule we expressed in our first opinion, to the effect that on disaffirmance the act disaffirmed is deemed void ab initio, and which was challenged by the petition for rehearing as not applicable as against the defendant company, while properly pertinent as against a person in the position of Mrs. Price, who dealt directly with the infant, cannot be applied here, for the quoted section of the Restatement states the general rule to be employed in these circumstances. Although we have found no cases, either in California or Missouri, dealing with this question, we cannot doubt that this rule would be followed in either state.

Accordingly, we hold that the defendant company was entitled to prevail as to the claim for one-third of the dividends on the 88 shares of common and 191 shares of preferred stock, and for one-third of the value of stock rights thereon, which, in the aggregate, amounted to the sum of $2,490.85 as of October 15, 1945, the date of plaintiff's demand. It is ordered that the judgment be modified by deducting said amount from the principal sum thereof, thus reducing the judgment to one for the sum of $6,819.50, with interest thereon, and costs incurred in the district court, and as so modified, the judgment is affirmed.

Appellant shall recover one-fourth of its costs on this appeal.

On Petition for Rehearing.

PER CURIAM.

Appellant makes a number of contentions in its petition for rehearing. We make allusion to but two of them.

■ With respect to the unauthorized alterations of the assignments of the stock certificates, it is asserted that an alteration has no effect upon the rights of the parties to an instrument when made by one not a party thereto. The argument is that since

the bank made the changes this was like an alteration by a mere interloper having no connection with any of the parties. The record shows that the bank was not handling the stock certificates and the assignments as a volunteer. Mrs. Price, with Burton, asserting that the transfer to Hurley had been by mistake, obtained through Mr. Greenhouse the forms for transfer of the stock. She and Burton took the certificates to the bank and requested the bank to handle the certificates and transfer them with the assignments to the appellant. That the bank, while transacting this business for Price and Burton, undertook to cut corners, did not make it any the less their agent. Otis Elevator Co. v. First Nat. Bank, 163 Cal. 31, 124 P. 704, 41 L.R.A.,N.S., 529; Rutherford v. Rideout Bank, 11 Cal.2d 479, 80 P.2d 978, 117 A.L.R. 383. Cf. Restatement, Law of Agency, § 263. Its acts cannot be treated as those of a volunteer or an interloper. If, as is contended, the alterations made by the bank were later acquiesced in by Price and Burton, this might be some evidence of their ratification of the alterations, but it would not aid the position of the appellant.

■ It is also asserted that we failed to give any consideration to appellant's contention that the court should have found that when Mr. Price procured the original transfer of the 575 shares, his gift was subject to an express condition that the dividends on the stock were to belong to Mrs. Price as long as she lived. The trial court found to the contrary. In its Finding XVII the court said: "At all times mentioned above in Paragraph XI, plaintiff was the owner of an undivided one-third interest in the 575 shares of common stock described above in Paragraph III, and was entitled to receive one-third of all dividends and stock rights paid and delivered by defendant to Elizabeth J. Price, as stated above in Paragraph XII."

For this finding there is ample support in the record, for although, as the findings show, Mr. Price informed Greenhouse that he expected to arrange for all dividends on the stock to be paid to Elizabeth J. Price during her lifetime, yet the testimony of Greenhouse shows that the parties under-

took to arrange for that result by having Burton and Price sign dividend orders, and that Greenhouse explained with great particularity that if the dividend orders were changed or later revoked, Mrs. Price would be "out of luck". To this Price replied that he was not worrying about that or that the dividend orders would be changed. The significance of this is, we think, that it manifests that the parties contemplated that the transfer then being made was such that Hurley, by revoking his dividend order, could keep the dividends for himself. The record justifies the court's finding that the transfer was a complete one, and not subject to the condition or reservation claimed by the appellant. Rehearing is denied.